UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.

**04-80945**

**CIV-MIDDLEBROOKS**

| | |
|---|---|
| UBS FINANCIAL SERVICES INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RALPH E. HODGSON, | ) |
| | ) |
| Defendant. | ) |

**MAGISTRATE JUDGE JOHNSON**

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Plaintiff UBS Financial Services Inc. ("UBS"), by its attorneys, submits herewith this memorandum of law in support of its Emergency Motion for a Temporary Restraining Order, a Preliminary Injunction and Expedited Discovery.

**I.**    **Nature of the Action and Defendant's Wrongful Conduct**

UBS is a securities brokerage firm engaged in the business of providing financial services and advice to its customers.  In this action, UBS seeks injunctive relief to protect itself from the severe and irreparable harm that it will incur as a result of the unlawful use of its records that contain particularized information relating to each customer including names, addresses, financial data and investment characteristics and the solicitation of its clients and customers by Defendant Ralph E. Hodgson ("Hodgson").  These customer accounts represent approximately $93 million in assets under UBS management and generated approximately $376,000 in gross commission revenues during the last year of Defendant's employment.

When Defendant was hired, he signed an "Investment Executive Trainee Agreement" (the "Agreement"). A copy of the Agreement is attached as Ex. "A" to the Complaint in this action. At that time, Defendant had never been licensed in the securities industry. UBS paid for his licensing and registrations, and paid him a salary while he prepared for the regulatory examinations and during the first few months of production. Defendant was a UBS employee and financial advisor until his resignation on October 8, 2004.

Because Defendant was not licensed as securities financial advisors prior to his employment, he required and received substantial training from UBS. In addition to training, UBS also:

a. Provided him with a salary during the initial period of his employment;

b. Provided him with the sponsorship he needed in order to take various licensing examinations that he was required to pass in order to work in the securities industry;

c. Registered him with the National Association of Securities Dealers, Inc. (the "NASD"), various securities exchanges, and various state securities departments;

d. Provided him with UBS's benefit packages;

e. Provided him with the resources and facilities of a national full-service securities brokerage firm, including office facilities, secretarial services, clearing services, sales assistants, research, national advertising, and promotional, marketing and sales support; and

f. Provided him with customer accounts, customer referrals, reassignments of former and current customer accounts, customer leads, and new accounts generated by UBS's national advertising campaign, from local seminars, from mailers, from "walk-in" and "call-in" customers.

In exchange for these substantial benefits (which were essential to Defendant's ability to begin work in the securities industry), he voluntarily entered into the Agreement which provided that:

> In the event of termination of Employee's services with [UBS] at any time regardless of the reason, Employee agrees:
>
> (i)      not to solicit, for a period of one year from the date of termination of Employee's employment, any of the Clients of [UBS] whom Employee served or other Clients of [UBS] whose names became known to Employee while in the employ of [UBS]; and
>
> (ii)      to return any and all original and copied records and purge or destroy any computerized, duplicated or copied records or information referring or relating to the Clients of [UBS referred to in Paragraph A(i) [quoted above], in whatever form they may exist. Nothing in this paragraph shall prevent Employee from retaining records or information referring or relating to his own accounts or the accounts of Clients of [UBS] who are related by blood or marriage to Employee.

Ex. "A" to Complaint.

The Agreement further provided that;

> Employee hereby agrees that:
>
> (i)      all records and information relating to or referring to customers who maintain accounts at [UBS] ('Clients of [UBS]'), including but not limited to the names and addresses of such clients, are and shall remain the property of [UBS] at all times during Employee's employment with [UBS] and after termination of Employee's employment for any reason with [UBS];
>
> (ii)      none of such records or information, nor any part of them, will be removed by Employee from the premises of [UBS] either in original form or in computerized, duplicated, or copied form except with the express permission of an office manager for the purpose of conducting the business of [UBS];
>
> (iii)      the names, addresses, and other information in such records will not be transmitted verbally, in writing, or in computerized

3

> form by Employee except in the ordinary course of conducting
> business for [UBS]; and
>
> (iv)    all of said records and information or any part of them are
> the sole proprietary information of [UBS] and shall be treated by
> Employee as confidential information of [UBS].

Id.

On October 8, 2004, Defendant resigned from UBS without prior notice and immediately

joined Wachovia Securities, LLC ("Wachovia"), a competitor securities brokerage firm. Almost

immediately after his resignation, Defendant solicited UBS's customers to transfer their accounts

to Wachovia. Defendant's conduct constitutes a misappropriation of trade secrets in violation of

the Florida Uniform Trade Secrets Act, (the "UTSA"), an actionable breach of contract, a

conversion of UBS's property, and a breach of the fiduciary duties he owed UBS.

Prior to and following Defendant's resignation from UBS, he unlawfully utilized and

continue to utilize UBS's customer records to solicit the customers he serviced to transfer their

accounts to Wachovia. In doing so, Defendant has deliberately and openly violated the above

contractual provisions and the applicable law. As a result of Defendant's actions, UBS has and

will continue to sustain severe and irreparable injury to its business unless injunctive relief is

granted.

## II.    Numerous Courts Have Recognized the Right of a Brokerage Firm to Injunctive Relief under Analogous Circumstances.

Hundreds of courts throughout the country have granted injunctive relief to securities

firms to restrain individual registered representatives from violating the non-solicitation and

confidentiality provisions of the agreements that they entered into with securities brokerage

firms. The right to injunctive relief under such circumstances has been repeatedly upheld by a

plethora of courts in Florida.[1]  Merrill Lynch, Pierce, Fenner & Smith v. Dunn, 191 F. Supp. 2d

1346 (M.D. Fla. 2002); Merrill Lynch, Pierce, Fenner & Smith v. Silcox, No. 01-8800-CIV,

2001 WL 1200656 (S.D. Fla. Oct. 4, 2001).  Moreover, the Eleventh Circuit has upheld the

propriety of injunctive relief under essentially identical circumstances in Merrill Lynch, Pierce,

Fenner & Smith, Inc v. Hegarty, 2 F.3d 405 (11th Cir. 1993), aff'g w/o opinion, 808 F. Supp.

1555 (S.D. Fla. 1992).

     In view of the consistency with which courts in Florida and elsewhere have enforced

essentially identical contracts, UBS's right to such relief cannot seriously be disputed.

**A.**     **UBS Satisfies All of the Requisites for Injunctive Relief.**

     Injunctive relief is appropriate where the movant can demonstrate:  (a) substantial

likelihood of success on the merits; (b) irreparable harm should the injunction not be granted; (c)

the threatened injury to the movant outweighs the proposed damage the injunction may cause the

nonmovant; and (d) promotion of the public interest.  Merrill Lynch, Pierce, Fenner & Smith Inc.

v. Hegarty, 808 F. Supp. at 1557; Warren Publ'g, Inc. v. Microdos Data Corp., 115 F.3d 1509,

1516-1517 (11th Cir. 1997); All Care Nursing Svc., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d

1535, 1537 (11th Cir. 1989).

---

[1]  See PaineWebber Incorporated v. Margolin, 00-8620-CIV-DIMITROULEAS (S.D. Fla.; Dimitrouleas, J.); PaineWebber Incorporated v. Dennison, 98-8727-CIV-RYSKAMP (S.D.Fla. 1998; Ryskamp, J.); Citicorp Investment Services v. Perez, 98-6476-CIV-RYSKAMP (S.D.Fla. 1998; Ryskamp, J.); Prudential Securities, Inc. v. Mallick, 96-1890-CIV-T-17-B (M.D.Fla. 1996; Kovachevich, J.); Merrill Lynch, Pierce, Fenner & Smith v. Opperman, No. 96-1042-CI V-T-24(B) (M.D. Fla. 1996; Bucklew, J.); Merrill Lynch, Pierce, Fenner & Smith v. Pease, No. 96-667-CIV-NESBITT (S.D.Fla. 1996; Nesbitt, J.); Smith Barney, Inc. v. Gross, No. CL-96-000943 (Fla.Cir.Ct., Palm Beach Co. 1996); Boslow v. Merrill Lynch, Pierce, Fenner & Smith, 94-8703 (S.D.Fla. 1994; Hurley, J.); Merrill Lynch, Pierce, Fenner & Smith v. Unger, No. 93-6264-CIV-Ryskamp (S.D. Fla. 1993; Ryskamp, J.); Merrill Lynch, Pierce, Fenner & Smith v. Hegarty, 808 F. Supp. 1555 (S.D. Fla. 1992; Nesbitt, J), aff'd w/o opinion, 2 F.3d 405 (11th Cir.1993); Merrill Lynch, Pierce, Fenner & Smith v. Kleid, No. 92-8643-Civ-MORENO (S.D. Fla. 1992) (Moreno, J); Merrill Lynch, Pierce, Fenner & Smith v. Martin, No. 92-386-Civ-ORL-20 (M.D. Fla. 1992) (Schlesinger, J.); Merrill Lynch, Pierce, Fenner & Smith v. Cosmides, No. 92-Civ-ORL-20 (M.D. Fla.1992) (Schlesinger, J.); Merrill Lynch, Pierce, Fenner & Smith v. Mellegard, No. 91-1798-Civ-T-10(c)(M.D. Fla. 1991) (Hodges, J.).  Copies of the Orders entered in these cases are attached as Composite Ex. "A."

**B.**      <u>**UBS Is Likely to Succeed on the Merits**</u>.

      **1.**      <u>**The Applicable Florida Statute**</u>.

Under Florida law, a restrictive covenant is enforceable where it is necessary to protect

one or more "legitimate business interests" of the party seeking its enforcement.  Fla. Stat. ch.

542.335(1)(b) (2004).  "Legitimate business interests" include trade secrets as defined in Fla.

Stat. ch. 688.002(4); valuable confidential business or professional information that otherwise

does not qualify as trade secrets; substantial relationships with specific prospective or existing

customers, patients or clients; customer, patient, or client good will associated with an ongoing

business or professional practice, by way of trade name, trademark, service mark, or "trade

dress";  and, extraordinary or specialized training.  <u>Id.</u> at ch. 542.335(b).  A legitimate business

interest is a business asset that, if misappropriated, would give its new owner an unfair

competitive advantage over its former owner.  John A. Grant and Thomas T. Steele, *Restrictive*

*Covenants:  Florida Returns To The Original "Unfair Competition" Approach For The 21*$^{st}$

*Century*, 70 Fla. B.J. 53, 54 (Nov. 1996).[2]

The party seeking enforcement must make a prima facie showing of the existence of a

legitimate business interest justifying the restrictive covenant.  Fla. Stat. ch. 542.335(1)(b)

(2004).  Once the party has done so, the burden shifts to the defendant to show that the restriction

is "overbroad, overlong, or otherwise not reasonably necessary to protect" the established

legitimate business interest.  <u>Id.</u> at ch. 542.335(1)(c).  The violation of an enforceable restrictive

covenant creates a presumption of irreparable injury and the court can enforce the covenant

through any appropriate and effective remedy, including temporary and preliminary injunctions.

<u>Id.</u> at ch. 542.335(1)(j).

---

[2]  This article was co-authored by the legislation's Senate sponsor and by the Florida Bar's principal drafter.

As a threshold question to its validity, the restrictive covenant must protect a legitimate business interest.  Id. at ch. 542.335(1)(b).  The "legitimate business interests" set forth in Fla. Stat. ch. 542.335(1)(b) (2004) are present here.

### 2.   UBS's Interest in Continued Patronage of Its Clients

UBS clearly has a "legitimate business interest" in maintaining its relationships with its existing customers whose accounts were serviced by Defendant, but developed by UBS through the use of its resources and good will.  In exchange for the opportunity to service those accounts at UBS, which enhanced the income Defendant received, they expressly agreed not to solicit customers upon their departure from UBS.  That contractual undertaking clearly protects UBS's "legitimate business interests" in maintaining the patronage of its customers and qualifies for enforcement under Fla. Stat. ch. 542.335(1)(b)(3-5) (2004).  Defendant's promise not to solicit UBS clients is enforceable.

### 3.   Protection of Confidential Information.

The restrictive covenants in the Agreement operate to protect UBS's trade secrets and "valuable confidential business and professional information."  Defendant recognized and acknowledged that information regarding UBS  customers was confidential and proprietary.

The "Customer Information" as defined in the Agreement is a "trade secret" within the meaning of the Florida Uniform Trade Secrets Act (the "UTSA"), Fla. Stat. ch. 688.001, et seq., Fla. Stat. ch. 542.335(1)(b)(1) (2004).  The UTSA expressly provides for the issuance of injunctions to maintain the sanctity of a trade secret and eliminate the commercial advantage that otherwise would be derived from the misappropriation.  Id. at ch. 688.003(1).  Under the UTSA, a trade secret is defined as:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process that:  (a) Derives

> independent economic value, actual or potential, from not being
> generally known to, and not being readily ascertainable by proper
> means by, other persons who can obtain economic value from its
> disclosure or use; (b) Is the subject of efforts that are reasonable
> under the circumstances to maintain its secrecy.

Id. at ch. 688.002(4).

In determining whether information is a trade secret, courts take into consideration the following factors:  (a) whether the information is secret; (b) the extent to which the information is known outside of the owner's business; (c) the extent to which it is known by employees and others involved in the owner's business; (d) the extent of measures taken by the owner to guard the secrecy of the information; (e) the value of the information to the owner and to his competitors; (f) the amount of effort or money expended by the owner in developing the information; and (g) the ease or difficulty with which the information could properly be acquired or duplicated by others.  Lovell Farms, Inc. v. Levy, 641 So. 2d 103, 104-105 (Fla. Dist. Ct. App. 1994)(citing Lee v. Cercoa, Inc., 433 So. 2d 1, 2 (Fla. Dist. Ct. App. 1983)).

In this case, UBS's records are a trade secret "compilation" of information that includes (among other things) the names of actual and potential customers, addresses and unique investment characteristics and financial data pertaining to its individual customers.  This information enabled UBS to effectively solicit and serve its customers.  In addition, this information is not readily available to the general public or UBS's competitors from a telephone book, library, professional directory or other publicly available resource.

Without knowing the identity of each UBS customer, and without contacting each customer individually, UBS's competitors could not acquire access to information contained in UBS's records regarding income, net worth, investment objectives, prior investment experience,

current money balances and the current securities position of UBS's customers.[3] Based on these facts, UBS's customer records constitute a trade secret compilation that "derives independent economic value ... from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use."

UBS employs reasonable efforts to maintain the confidentiality of its records. Access to the records is restricted to those employees whose jobs require them to refer to this information, duplication of the records is prohibited, and there are constant reminders about the confidential nature of the information contained on the records.

Numerous decisions have accorded trade secret status to customer information maintained by brokerage firms. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hegarty, supra, 808 F. Supp. at 1558 (applying Florida law and holding that a brokerage firm "has a legitimate interest in the [customer] list because it is a trade secret.").[4] Florida also has afforded trade secret protection to an employer's customer list and information where a former employee has joined a competitor. For example, Sethscot Collection, Inc. v. Drbul, 669 So. 2d 1076 (Fla. Dist. Ct. App. 1996), held that the plaintiff's active customer list qualified as a trade secret entitled to protection through an injunction. The Sethscot court explained its holding as follows:

---

[3]  Such information must be maintained by a securities brokerage firm in order to comply with SEC and self-regulatory organization rules. See SEC Rule 17a-3 (17 C.F.R. §17a-3).

[4]  See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Zimmerman, No. 96-2412-JWL, 1996 WL 707107, at *2 (D. Kan. Oct. 1, 1996)("[T]he Court concludes that the Documents improperly taken by the defendant constitute a compilation within the meaning of V.A.M.S. § 417.453(4) . . . As a result, the Court concludes that . . . the Documents constitutes a trade secret."); Orbach v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 93-CV-75349-DT, 1994 WL 900431, at *6 (E.D. Mich. Jan. 11, 1994) (holding that "[t]he Michigan Court of Appeals . . . has held that Merrill Lynch's [plaintiff brokerage firm's] client list is the property of Merrill Lynch . . . [Plaintiff] has a strong likelihood of success on the merits of this claim"); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer, 816 F. Supp. 1242, 1246 (N.D. Ohio 1992)("Even absent a specific contractual provision, Merrill Lynch's customer list is entitled to trade secret protection under Ohio law."); Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 777 F. Supp. 1349, 1354, aff'd per curiam, 948 F.2d 1286 (5th Cir. 1992) (granting injunctive relief on that ground that an injunction was necessary to protect "goodwill and trade secrets").

> The active customer list is a distillation of the prospective
> customer list and contains the names of approximately 6,800
> sororities and fraternities that have actually ordered from the
> plaintiffs in the past eight years.  The active customer list also
> contains a detailed purchasing history for each sorority and
> fraternity on the list.  Moreover, the active customer list is
> confidential and not readily ascertainable to the public.  Under the
> circumstances, we find that the active customer list does qualify as
> a trade secret entitled to injunctive protection.

Sethscot Collection, Inc., 669 So. 2d at 1078.

In utilizing UBS's customer information to solicit customers, it is apparent that Defendant have misappropriated UBS's trade secret in violation of the UTSA.  Under the UTSA, "misappropriation" of a trade secret means acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or disclosure or use of a trade secret of another without express or implied consent by a person who, at the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.  Fla. Stat. ch. 688.002(2) (2004).

Having signed the Agreement, Defendant knew that "Customer Information" related to the customers was confidential and that he could not take that information with him to a new employer.  Defendant's use of the Customer Information constitutes a misappropriation of UBS's trade secrets in that Defendant knew at the time of disclosure that the information was acquired under circumstances that gave rise to a duty to maintain its secrecy and limit its use.

Even if UBS's records do not constitute a trade secret under UTSA, its records nonetheless constitute "valuable confidential business or professional information" which also qualifies as a "legitimate business interest" justifying the restrictive covenant.  Id. at ch. 542.335(1)(b)(2).  As previously stated, these records contained particularized information

10

relating to each of its customers including names, financial data and unique investment characteristics. If misappropriated, this information would give competitors an unfair advantage over UBS.

### 4.    The Restraints Are Reasonable.

Having established prima facie that the restraint is necessary to protect a legitimate business interest, UBS is not required to prove the reasonableness of the restraint. The burden of pleading and proving the unreasonableness of the restraint falls squarely on Defendant. Id. at ch. 542.225(1)(c). The restraints that UBS seeks to impose on Defendant are reasonable. They are not "overbroad, overlong, or otherwise not reasonably necessary to protect [UBS's] legitimate business interest." Id. at ch. 542.335(1)(c).[5]

The Agreement does not preclude Defendant from competing with UBS. Instead, the Agreement is narrowly drawn to limit Defendant's solicitation of, and misappropriation of information concerning, only the UBS accounts he serviced or came to know about while employed by UBS. Even as to those persons, if Defendant had not breached his Agreement with UBS, he could have done business with any person who approached him Given that UBS has established its legitimate business interests justifying the restrictive covenants and has shown that the restrictive covenants are reasonably tailored to protect these interests, the issuance of an injunction would be an appropriate remedy. Id. at ch. 542.335(1)(j).

### 5.    UBS Is Likely to Succeed on Its Common Law Claims.

Even in the absence of an express contract like the Agreement, injunctive relief would nonetheless be appropriate in three other respects to protect UBS's confidential customer

---

[5]    In determining the reasonableness of the duration of a restrictive covenant, the court is statutorily required to presume that a restraint of five or less years is reasonable where a trade secret is implicated. Fla. Stat. ch. 542.335(1)(e) (2004).

11

records.  First, UBS's records and the information contained therein are the sole and exclusive

property.  By removing these records, providing them to Wachovia and using them to solicit

customers to transfer their accounts to Wachovia, Defendant has committed the intentional tort

of conversion.  See Shelby Mut. Ins. Co. of Shelby, Ohio v. Crain Press, Inc., 481 So. 2d 501,

503 (Fla. Dist. Ct. App. 1985) ("conversion occurs when a person who has a right to possession

of property demands its return and the demand is not or cannot be met"); Senfeld v. Bank of

Nova Scotia Trust Co., 450 So. 2d 1157, 1160-1161 (Fla. Dist. Ct. App. 1984)("a conversion is

an unauthorized act which deprives another of his property permanently or for an indefinite

time").

Second, Florida law expressly protects a customer list from misappropriation and

conversion through criminal penalties and injunctive relief.  Indeed, copying of a trade secret is a

third degree felony under Florida law.  Fla. Stat. ch. 812.081(2) (2004).  Florida Statute ch.

§812.081 also specifically defines a trade secret to include a "list of customers."  Id. at ch.

812.081(1)(c).

Defendant's unlawful use of UBS's records constitutes unfair competition.  By resigning

from UBS without any prior notice, and by soliciting UBS customers on behalf of Wachovia,

Defendant has deprived UBS of a full and fair opportunity to compete for the patronage of those

customers.  As such, Defendant's conduct constitutes unfair competition.  The law of unfair

competition is the umbrella for all statutory and nonstatutory causes of action arising out of

business conduct which is contrary to honest practice in industrial or commercial matters.  3 R.

Callman, The Law of Unfair Competition, §4.1, at 120.

Finally, during the time that Defendant was a UBS employee, he owed a fiduciary duty of

loyalty that required him to act only in UBS's best interests.  During the term of employment, an

employer has the right to expect the undivided loyalty of its employee. An employer's right to undivided loyalty is breached when an employee engages in disloyal acts in anticipation of his future competition with the employer. <u>Fish v. Adams</u>, 401 So. 2d 843, 845 (Fla. Dist. Ct. App. 1981). Such disloyal acts include using confidential information acquired during the course of his employment or soliciting customers prior to the end of his employment. <u>Id.</u> Here, Defendant breached his duty of loyalty to UBS when he misappropriated its trade secrets and solicited customers to transfer their accounts from UBS to Wachovia. Defendant engaged in these acts both prior to and following his termination. Defendant's unlawful conduct presented a conflict of interest that compromised UBS's right to his undivided loyalty. UBS has made a sufficient showing to establish a likelihood of success on the merits, and has satisfied that requisite of injunctive relief.

**B.**      **<u>Irreparable Harm and the Lack of an Adequate Remedy at Law.</u>**

As stated above, under Florida law, the violation of an enforceable restrictive covenant creates a presumption of irreparable harm. Fla. Stat. ch. 542.335(1)(j) (2004). Likewise, the UTSA also expressly provides for the imposition of injunctive relief to prevent "actual or threatened misappropriation" of a trade secret and to eliminate the commercial advantage that otherwise would be derived from the misappropriation. <u>Id.</u> at ch. 688.003(1).

Nevertheless, even without the presumption of irreparable harm, UBS will clearly be subjected to immediate irreparable harm if an injunction does not issue. Once again, numerous courts have determined that a brokerage firm has no adequate remedy at law in the absence of an injunction when departing registered representatives have engaged in conduct essentially identical to that in which Hodgson is now engaged.

Indeed, in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano, supra, the Seventh

Circuit affirmed the issuance of a temporary restraining order and preliminary injunctive relief

under closely analogous circumstances.  Similarly, in Merrill Lynch, Pierce, Fenner & Smith,

Inc. v. Bradley, supra, the Fourth Circuit held that **immediate** injunctive relief must be rendered

"*within a few days*" in order to negate the otherwise irreparable harm caused by conduct such as

that engaged in by Calleja here.  See also IDS Life Ins. Co. v. SunAmerica, 958 F. Supp. 1258

(N.D Ill. 1997), aff'd, 136 F.3d 537, 542-543 (7th Cir. 1998).[6]

All of the considerations that supported the determination of the Salvano, Bradley and

IDS v. SunAmerica Courts concerning irreparable harm and the lack of an adequate remedy at

law are equally present in this case.  First, it will be impossible to determine UBS's damages

with any reasonable degree of certainty.  This consideration has been recognized in numerous

cases involving analogous circumstances as a sufficient basis for injunctive relief.  In Merrill

Lynch, Pierce, Fenner & Smith, Inc. v. Stidham, 658 F.2d 1098, 1102 (5th Cir. 1981), the Fifth

Circuit held that:

> The injury here is such that damages could not adequately
> compensate.  Were defendant permitted by the law to exploit the
> clientele of their former employers, every investment that
> reasonably flowed from the exploitation should be included in the
> damages award.  How such a figure could be arrived at escapes us.

See also IDS v. SunAmerica, supra.

UBS suffers irreparable harm by virtue of the unauthorized disclosure of confidential

information concerning its customers.  Customers have entrusted UBS with sensitive and private

financial information concerning their assets and net worth, their annual incomes, and their

---

[6]  The Seventh Circuit vacated one aspect of the District Court's injunction on the ground that it was vague, and
remanded with instructions to reformulate that portion of the order.

investment experience, goals and objectives.  UBS is duty-bound to maintain the confidentiality

of such information.  In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer, supra, the

misappropriation of such information by a former registered representative of a securities

brokerage firm, and the provision of that information to a competitor, was held to have caused

irreparable harm to the plaintiff-firm.  The Kramer Court stated:

> [I]rreparable and immeasurable harm lies in the fact that [plaintiff]
> Merrill Lynch clients, when they discover that their financial
> information, market transactions, and investment assets which they
> presumed were held in confidence have been disclosed, will lose
> trust and confidence in Merrill Lynch.

816 F. Supp. at 1247.  See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Zimmerman,

supra.  As in Kramer and Zimmerman, injunctive relief is necessary in this case to protect the

privacy and sanctity of UBS's confidential customer information and records.

Defendant's conduct causes UBS irreparable injury by damaging the stability of the

office in which he worked, and by threatening UBS with a future loss of personnel (due to the

incentive that would be created for other UBS financial advisors to violate their agreements with

UBS if the agreement with Defendant is not enforced).  Accordingly, immediate injunctive relief

also is necessary to discourage other UBS employees from breaching their contractual

commitments and diverting UBS's trade secrets to competitors.

Judge Zatkoff specifically recognized this consideration in Orbach v. Merrill Lynch,

Pierce, Fenner & Smith, Inc., supra, stating:

> As the parties have indicated to this Court, and as is evidenced by
> the myriad of decisions in this area of the law, this precise factual
> and legal issue is oft repeated. Allowing plaintiff to accept
> business from these clients on the basis of on the language in the
> Agreement, would encourage, and sanction, future parties in
> plaintiff's position to breach their contractual duties as much as
> possible, because the more clients which can be solicited before an

injunction is entered, the more clients plaintiff will be able to have transferred.

1994 WL 900431 at *9.  UBS is exposed to irreparable harm and lacks an adequate remedy at law.

### C.   <u>Balancing of the Relative Hardships and the Public Interest.</u>

The substantial likelihood of UBS's ultimate success on the merits, and the immediate and irreparable harm to which UBS would be subjected, weigh heavily in favor of the entry of an injunction.  The balance is not shifted by any harm to Defendant resulting from an injunction, because there is no such harm (or, if any exists, it is minimal).

An injunction would simply require Defendant to adhere to his contractual obligations. Requiring Defendant to live up to the promises that he made in exchange for his receipt of the training, licensing in the securities industry, salary, assigned accounts, and the other benefits of UBS employment, does not constitute "harm" or "hardship."

Moreover, the restrictions on Defendant's activities as a result of an injunction are by no means severe.  UBS is not seeking to foreclose Defendant from competing with UBS, or from making a living as a stockbroker. Defendant is therefore free to seek the patronage of any other potential customers – of which there are millions.  Moreover, if Defendant had simply chosen to abide by his Agreement, there would be no impediment to his acceptance of business from *any* customer who came to him without solicitation.

Where, as here, a court is called upon to enforce a **non-solicitation** covenant (as opposed to a **non-competition** clause), the slight restriction such a provision imposes on the Defendant has routinely been held to be insufficient to preclude an injunction.  To the contrary, as was recognized in <u>IDS v. SunAmerica</u>, <u>supra</u>, such provisions strike a reasonable balance between the interest of a firm and its ex-employee.  <u>See also</u> <u>Merrill Lynch v. Kramer</u>, 816 F. Supp. 1242,

16

1248 (N.D. Ohio 1992) ("There is nothing in the agreement which prohibits Mr. Kramer from

continuing with his occupation as a broker in the securities industry.").  As recognized in IDS v.

SunAmerica:

> Because the injunction will only prohibit defendant from engaging
> in illegal conduct in which they have no right to engage, there is
> no recognizable harm that will be caused to defendant if the
> injunctions are issued . . . The injunction will prohibit defendant
> only from unfairly competing with plaintiffs by inducing
> plaintiffs' agents to destroy plaintiffs' insurance and securities
> customer goodwill and to misappropriate information obtained
> while the agents were in confidential relationships with plaintiffs.

958 F. Supp. at 1282.  Finally, under the circumstances present here, the entry of an injunction

will promote the public interest by upholding Florida law, by upholding the sanctity of contracts,

by protecting the confidentiality of information provided by customers in confidence, and by

ensuring that competition in the securities industry is both vigorous and fair.  Once again, Judge

Andersen's decision in IDS v. Sun America is squarely on point, as he stated eloquently:

> The public has an interest in preventing unfair competition,
> commercial piracy, misleading solicitations, and in safeguarding
> the confidentiality of financial records.  Consequently, the public's
> interest has been disserved by defendant's actions.  The public has
> no interest in destroying contracts, rewarding theft, and
> encouraging unethical business behavior.

958 F. Supp. at 1282.  In short, every requisite needed for injunctive relief – i.e., a likelihood of

success on the merits, irreparable harm and the lack of an adequate remedy at law, a balancing of

the relative hardships, and the public interest – militates in favor of the entry of an injunction

here.  In view of the myriad of decisions in which injunctions have been entered to prevent

individual registered representatives from violating the restrictive covenants contained in their

agreements with brokerage firms, an injunction should be entered to restrain Defendant from

continuing to engage in their course of actionable conduct.

IV.  **UBS Is Entitled to an Injunction Pending Arbitration on the Merits.**

      The merits of the parties' dispute are to be determined in arbitration.  Arbitration is required both by the parties' agreements, and pursuant to §10201 of the NASD Code of Arbitration Procedure.  Even though the merits are to be decided in arbitration, it is exceedingly well settled that Courts can, and under appropriate circumstances, must grant injunctive relief to maintain the **status quo** pending arbitration of the controversy.

      The Second Circuit held that where an NASD member elects to seek injunctive relief from a Court – as UBS has here—the Court is duty-bound to rule on the issue of injunctive relief, and cannot relegate the parties to the NASD arbitration process.  <u>American Express Fin. Advisors Inc. v. Thorley</u>, 147 F.3d 229 (2nd Cir. 1998).

V.  **Conclusion**

      For all the reasons discussed above, UBS has established all of the requisites for a temporary restraining order and a preliminary injunction.  A temporary restraining order should be issued immediately precluding Defendant from soliciting those customers specified by his Agreement, enjoining Defendant from making further use of UBS's records and the information contained therein, and requiring the immediate return of those records.  By providing this relief, this Court would merely be granting UBS the same relief that has been provided by innumerable courts throughout the country under essentially identical circumstances.  The Court should also set this matter for a hearing on a preliminary injunction, pending arbitration on the merits of the dispute pursuant to §10335 of the NASD Code of Arbitration Procedure.

DATED: October 14, 2004

GENOVESE JOBLOVE & BATTISTA
Bank of America Tower
36th Floor
100 S.E. Second Street
Miami, Florida 33131
Telephone:   (305) 349-2300
Facsimile:   (305) 349-2310


By: _Melanie S. Cherdack_

Melanie S. Cherdack
Fla. Bar No. 503576
Peter W. Bellas
Fla. Bar No. 611387

**Of Counsel**

Michael B. Roche, Esq.
Michael D. Lee, Esq.
Schuyler, Roche & Zwirner, P.C.
One Prudential Plaza, Suite 3800
130 East Randolph Street
Chicago, Illinois 60601
Telephone:  (312) 565-2400
Facsimile:  (312) 565-8300



UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

PAINEWEBBER INCORPORATED,

        Plaintiff

vs.

LAWRENCE M. MARGOLIN
and MICHAEL SANDBERG,

        Defendant.

_____/

CASE **00-8620**

CIV-DIMITROULEAS

MAGISTRATE JUDGE
JOHNSON

## ORDER

THIS CAUSE CAME before the Court this _12_ day of July, 2000, on the Complaint, the Motion of Plaintiff PaineWebber Incorporated for a Temporary Restraining Order and a Preliminary Injunction, and the Affidavits of Jeffrey Dudas,, Bea Albrecht, Robert Ross, Rob Golden and Jan Cowert, due notice has been given to Defendants Lawrence M. Margolin ("Margolin") and Michael Sandberg ("Sandberg") of PaineWebber's application for a Temporary Restraining Order. The Court, having considered the foregoing documents and having heard argument of counsel for both sides, hereby finds:

Under Section 10335 of the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. ("NASD"), PaineWebber has the right to seek interim injunctive relief pending an arbitration hearing on the merits before a duly-appointed NASD Panel.

PaineWebber's rights with respect to its property, proprietary and confidential information, competitive interests, and contract rights with Margolin and/or Sandberg are being and will continue to be violated unless they are restrained in the manner set forth below.

PaineWebber will suffer irreparable harm and loss if Margolin and/or Sandberg are permitted



# EX. "A"

to: (a) convert the property of PaineWebber to his own personal use and benefit, and that of his new employer; and (b) solicit the patronage of any PaineWebber clients who Margolin and/or Sandberg serviced at PaineWebber or whose names became known to them during their PaineWebber employment.

PaineWebber has no adequate remedy at law.

Greater injury will be inflicted upon PaineWebber if temporary injunctive relief were denied than would be incurred by Margolin and Sandberg if the relief requested by PaineWebber is granted.

The public interest would be served by a grant of the requested relief.

IT IS HEREBY ORDERED AND DECREED THAT:

Margolin and Sandberg are hereby enjoined and restrained, directly or indirectly, whether acting alone or in concert with others, including any officer, agent, representative, and/or employee of their new employer, Prudential Securities Incorporated ("Prudential"), from:

1. Soliciting any business from any client or customer whom Margolin and/or Sandberg served during their employment with PaineWebber, or any other customer or client of PaineWebber whose name became known to Margolin and/or Sandberg while in the employ of PaineWebber; and

2. Accepting any business from any of said customers or clients whom Margolin and/or Sandberg (or Prudential on their behalf), have solicited at any time in the past for the purpose of doing business with their present employer (excluding members of their immediate families), and from delivering any account transfer requests received from said customers or clients to PaineWebber; and

3. Using, disclosing, or transmitting for any purpose (including but not limited

2

to the solicitation of said clients), any information contained in the records of PaineWebber, including but not limited to the names, addresses, and financial information of said customers or clients; and

    4.      Requiring Margolin and Sandberg to return to PaineWebber as promptly as possible all originals, copies or other reproductions, in any form whatsoever, of any record of PaineWebber, and to purge or destroy any computerized record of PaineWebber that is within their possession, custody or control.

This Order shall remain in full force and effect pending further order of this Court.  This case is set for a hearing on PaineWebber's motion for a preliminary injunction on July 20, 2000 at 1:30 PM.

    Pursuant to §10335(g) of the NASD Code of Arbitration Procedure and §§3 and 4 of the Federal Arbitration Act, the parties are directed to proceed toward expedited arbitration on the merits of the controversy before a full Panel of arbitrators appointed in accordance with §10335(g) of the NASD Code of Arbitration Procedure.

    In view of the nature of the controversy and PaineWebber's financial condition, bond is deemed to be unnecessary.

    DONE and ORDERED in Chambers in BROWARD County, Florida, this 12 day of July. 2000 AT 3:30 PM.

                                                        _____
                                                        UNITED STATES DISTRICT JUDGE

Conformed copies to:
Melanie S. Cherdack, Esq.
Jonathan E. Perlman, Esq.
~~Lawrence M. Margolin~~
~~Michael Sandberg~~
Craig Stein

3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 98-8727

PAINEWEBBER INCORPORATED,

    Plaintiff

vs.

ROBERT A. DENNISON,

    Defendant.

_____/

### Order

This cause came before the Court this 14 day of Oct , 1998, on the Complaint, the Motion of plaintiff PaineWebber Incorporated for a Temporary Restraining Order and a Preliminary Injunction, and the Affidavit of David W. Kraft. Due notice has been given to defendant Robert A. Dennison ("Dennison") of PaineWebber's application for a Temporary Restraining Order. The Court, having considered the foregoing documents and having heard argument of counsel, hereby finds:

1.    Under Section 10335 of the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc. ("NASD"), PaineWebber has the right to seek interim injunctive relief pending an arbitration hearing on the merits before a duly-appointed NASD Panel.

2.    PaineWebber's rights with respect to its property, proprietary and confidential information, competitive interests, and contract rights with Dennison are being and will continue

to be violated by Dennison unless Dennison is restrained in the manner set forth below.

3.      PaineWebber will suffer irreparable harm and loss if Dennison is permitted to: (a) convert the property of PaineWebber to Dennison's own personal use and benefit, and that of Dennison's new employer; and (b) solicit the patronage of any PaineWebber clients who Dennison serviced at PaineWebber or whose names became known to Dennison during his PaineWebber employment.

4.      PaineWebber has no adequate remedy at law.

5.      Greater injury will be inflicted upon PaineWebber if temporary injunctive relief were denied than would be incurred by Dennison if the relief requested by PaineWebber is granted.

6.      The public interest would be served by a grant of the requested relief.

IT IS HEREBY ORDERED AND DECREED THAT:

A.      A temporary restraining order shall issue immediately and security in the amount of $10,000 shall be posted no later than the __16__ day of October, 1998.  Dennison is hereby enjoined and restrained, directly or indirectly, whether acting alone or in concert with others, including any officer, agent, representative, and/or employee of Dennison's new employer, MSDW, from:

1.      Soliciting any business from any client or customer whom Dennison served during his employment with PaineWebber, or any other customer or client of PaineWebber whose name became known to Dennison while in the employ of PaineWebber; and

2.      Accepting any business from any of said customers or clients whom Dennison (or MSDW on Dennison's behalf), have solicited at any time in the past for the

2

purpose of doing business with Dennison's present employer (excluding members of Dennison's immediate family), and from delivering any account transfer requests received from said customers or clients to PaineWebber; and

     3.    Using, disclosing, or transmitting for any purpose (including but not limited to the solicitation of said clients), any information contained in the records of PaineWebber, including but not limited to the names, addresses, and financial information of said customers or clients; and

     4.    Requiring Dennison to return to PaineWebber as promptly as possible all originals, copies or other reproductions, in any form whatsoever, of any record of PaineWebber, and to purge or destroy any computerized record of PaineWebber that is within Dennison's possession, custody or control.

    B.    This Order shall remain in full force and effect pending further order of this Court. This case is set for a hearing on PaineWebber's motion for a preliminary injunction on _Oct 23, 1998_ at _10:00. A . M_

    C.    The parties are granted leave commence discovery immediately in preparation for the preliminary injunction hearing.

    D.    Pursuant to §10335(g) of the NASD Code of Arbitration Procedure and §§3 and 4 of the Federal Arbitration Act, the parties are directed to proceed toward expedited arbitration

3

on the merits of the controversy before a full Panel of arbitrators appointed in accordance with

§10335(g) of the NASD Code of Arbitration Procedure.

ENTER:

United States District Judge

Entered this 14 day of October, 1998
at West Palm Beach, Florida

Time: _10:00 A.M._

Certified to be a true and
correct copy of the original,
Carlos Juenke, Clerk
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date 10-14-98

Copies furnished to:

Melanie S. Cherdack, Esq.
Robert A. Dennison (by mail)

4



08/17/96    15:35    RIVIN & ASSOCIATES → 7136501728                          NO. 952    085
·06/16/96    10:21    ☎306 ·    J749         Z & T & E MIAMI                       ☐002

FILED by _____ D.C.

MAY 14 1998

CARLOS JUENER
CLERK U.S. DIST. CT.
S.D. OF FLA.- W.P.B.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CITICORP INVESTMENT SERVICES,               CASE NO. 98-6476-CIV-RYSKAMP
                                            Magistrate Judge Vitunac

                   Plaintiff,

v.

                                                           ORDER

JORGE L. PEREZ,

                   Defendant.
_____/

AND NOW, this 14 day of May, 1998, upon consideration of the Amended Complaint, Motion of Plaintiff, Memorandum of Plaintiff and all exhibits submitted and having determined that:

1.      The rights of Plaintiff Citicorp Investment Services ("CIS") with respect to its property, proprietary and confidential information, competitive interests and valid and enforceable contractual agreement with Defendant are being and will continue to be violated by Defendant unless Defendant is restrained therefrom; and

2.      Plaintiff will suffer irreparable harm and loss if Defendant is permitted to (a) solicit and divert CIS accounts, clients, and customers; and (b) use or disclose the confidential and trade secret customer information of Plaintiff to Defendant's own personal use and benefit, and that of Defendant's new employer, A.G. Edwards & Sons, Inc. ("A.G. Edwards"); and

 

3.      Plaintiff has no adequate remedy at law; and

4.      Greater injury will be inflicted upon Plaintiff by the denial of temporary injunctive relief than would be inflicted upon Defendant by the granting of such relief.

**IT IS HEREBY ORDERED AND DECREED THAT:**

1.      A Temporary Restraining Order issue immediately and that security in the amount of $ _5000 ⁰⁰_ be given no later than the __18__ day of May, 1998;

2.      Defendant, and anyone acting in active concert or participation with Defendant who receives actual notice of this Order, including any agent, employee, officer or representative of Defendant's current employer, A.G. Edwards, are enjoined and restrained, until hearing and thereafter until further Order of this Court, from:

(a)   soliciting any business from any client or prospective client of CIS whom Defendant served or whose name became known to Defendant while acting as a registered representative of CIS or its predecessors and, further, from accepting any business or account transfers from any of said clients or prospective clients whom Defendant or A.G. Edwards on Defendant's behalf have solicited at any time in the past for the purpose of doing business with A.G. Edwards (excluding (i) Defendant's immediate family and (ii) clients with whom Defendant had a business relationship prior to his association with CIS or its predecessors, provided that no Company Information, as defined by Defendant's Registered Representative Agreement, has been or is used in soliciting said clients); and

(b)   using, disclosing, or transmitting for any purpose, including

2



06/17/98   15:36   RUFIN & ASSOCIATES → 7136581720                                  NO.952   D87

solicitation of said clients, the information contained in the records of CIS and of Citicorp and/or any of its subsidiaries or affiliates, including, but not limited to, the names, addresses, and financial information of the clients or prospective clients Defendant served or whose names became known to him while acting as a registered representative of Plaintiff;

3.    Defendant, and anyone acting in active concert or participation with Defendant who receives actual notice of this Order, including any agent, employee, officer or representative of Defendant's current employer, A.G. Edwards, are further ordered to return to CIS any and all information pertaining to clients or prospective clients of CIS or of Citicorp or any of its subsidiaries or affiliates whether in original, copied, computerized, handwritten or any other form, and including without limitation, the names, addresses, telephone numbers or financial information of said clients or prospective clients, and to purge any such information from their possession, custody, or control, within 24 hours of service of this Order.

4.    This Order shall remain in full force and effect until such time as this Court specifically orders otherwise;

5.    Plaintiff is granted leave to commence deposition discovery immediately in aid of preliminary injunction proceedings before the Court;

6.    Pending a preliminary injunction hearing before this Court, and pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties are directed to proceed toward an expedited arbitration hearing on the merits before a panel of duly appointed arbitrators in accordance with Rule 10335(g) of the National Association of Securities Dealers Code of Arbitration Procedure.

3



08/17/98   15:36   RUBIN & ASSOCIATES - 7136581720                                NO. 952   P08

7.     Defendants shall show cause before this Court on the _22_ day of May, 1998 at _3:00_ o'clock _p_.m., or as soon thereafter as counsel may be heard, why a Preliminary Injunction should not be ordered according to the terms and conditions set forth above.

BY THE COURT:

_____
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

_10. 30 AM_

Copies furnished to:

**Counsel of Record**
Jorge L. Perez

4



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM DIVISION

CITICORP INVESTMENT SERVICES,

                Plaintiff,

    v.

JORGE L. PEREZ,

                Defendant.

Case No. 98-6476 CIV RYSKAMP
Magistrate Judge Vitunac

FILED by ___ D.C.

MAY 27 1998

CARLOS JUENEZ
CLERK U.S. DIST. CT.
S.D. OF FLA - W.P.B.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND PRELIMINARY INJUNCTION ORDER

        Plaintiff Citicorp Investment Services ("CIS") applies for a preliminary injunction pending expedited arbitration in the National Association of Securities Dealers ("NASD") precluding Defendant Jorge Perez ("Defendant") from soliciting or doing any business with the CIS customers she served or whose names became known to him while acting as a registered representative of CIS and prohibiting Defendant from using, disclosing or transmitting certain information contained in CIS's records. On May 14, 1998, the Court granted CIS's motion for a temporary restraining order. The Court held a preliminary injunction hearing on May 22, 1998 and, for the reasons that follow, the Court grants CIS's motion for a preliminary injunction.

### FINDINGS OF FACT

    1. Defendant is a former registered representative of CIS who serviced over seventy CIS accounts and who had access and exposure to hundreds of other CIS accounts and prospective accounts of CIS in its Ft. Lauderdale, Florida branch office.

    2. As a condition of his association with CIS, Defendant executed an agreement known




AUG-24-98  08:27                          P.03    R-684   Job-275
08/24/98 ... 08:45    RUBI    ASSOCIATES → 7136581720              NO. 963    D03

as a Registered Representative Agreement (hereafter the "Agreement") which prohibits him from soliciting or doing business with CIS customers for one year following termination of his association with CIS. (See Agreement at ¶ 7) (Exhibit "A" to CIS' Complaint).

3.  The Agreement further prohibits Defendant from using or disclosing to any third party any confidential information pertaining to customers of CIS or its affiliates. (See Agreement at ¶ 6) (Exhibit "A" to CIS' Complaint).

4.  Defendant resigned from CIS on May 1, 1998 and immediately accepted employment with A.G. Edwards & Sons, Inc. ("A.G. Edwards"), a competitor securities firm located in the same building upstairs from the CIS branch in which Defendant worked as a registered representative of CIS.

5.  Prior to his resignation from CIS, Defendant compiled a list of names, addresses and telephone numbers of over thirty-two CIS customers and prospects.

6.  Upon joining A.G. Edwards, Defendant disclosed this customer information to A.G. Edwards to use in preparing a solicitation mailing to these customers on A.G. Edwards letterhead. Defendant then sent out a mass solicitation mailing to over thirty-two accounts he formerly serviced at CIS, encouraging them to transfer their accounts to Defendant at A.G. Edwards. Defendant also made telephone calls to numerous CIS clients and at least one prospective client in which he solicited these clients to do business with him at A.G. Edwards. Defendant actually made telephone contact with at least twenty CIS clients.

## CONCLUSIONS OF LAW

### Jurisdiction

7.  The parties agree that the merits of this dispute will be resolved in arbitration before

2



AUG-24-98  08:27
08/24/98    08:45    RUBI   ASSOCIATES - 7136581720          P.04    R-684    Job-275    NO.963    D04

the National Association of Securities Dealers ("NASD"). CIS contends, however, that this court has jurisdiction to enter a temporary restraining order and a preliminary injunction pending arbitration in order to preserve the status quo pending a final determination by the arbitration panel. The Court agrees.

8. CIS and Defendant specifically agreed in Defendant's Agreement that CIS would be entitled to seek temporary and preliminary injunctive relief from a court of competent jurisdiction pending an arbitration hearing on the merits. (See Exhibit "A" to CIS's Complaint at ¶ 9). In American Express Financial Advisors, Inc. v. Makarewicz, 122 F.3d 936, 940 (11th Cir. 1997), the Eleventh Circuit held that "[t]his [kind of] provision leaves no room for ambiguity: the parties intended to allow 'a court of competent jurisdiction' . . . to provide injunctive relief" pending arbitration.

9. The NASD Code of Arbitration Procedure also specifically provides for the issuance of injunctive relief by a court pending arbitration. See NASD Code Rule 10335 ("[P]arties to the arbitration may seek injunctive relief either within the arbitration process or from a court of competent jurisdiction.").

10. Moreover, this Court and numerous federal courts of appeal have held that preliminary injunctive relief in court is proper under the Federal Arbitration Act, 9 U.S.C. §§1 et seq., to prevent irreparable harm pending arbitration on the merits. See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Hegarty, 808 F. Supp. 1555 (S.D. Fla. 1992), aff'd, 2 F.3d 405 (11th Cir. 1993); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Salvano, 999 F.2d 211 (7th Cir. 1993).

11. Rule 10335(g) of the NASD Code of Arbitration Procedure provides that if a Court

3



AUG-24-98  08:27                                                    P.05      R-884      Job-275

08/24/98      08:45    PUB   ASSOCIATES → 7136501720                          NO. 963      005

issues an injunction against one of the parties to an arbitration agreement, then the arbitration "concerning the matter of the injunction shall proceed in an expedited manner according to a time schedule and procedures specified by the panel appointed under [the NASD] Code." See NASD Code of Arbitration Procedure Rule 10335(g). See also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Pease, No. 96-667-CIV-NESBITT (S.D. Fla. 1996) (S.D. Fla. 1996) (Slip Op. at 4).

## Entitlement to Preliminary Injunctive Relief

12. Having determined that the Court has jurisdiction to grant a preliminary injunction, the Court now turns to CIS's application. In order to show entitlement to a preliminary injunction, CIS must demonstrate (1) a likelihood of success on the merits, (2) that CIS will suffer irreparable harm absent injunctive relief, (3) that the injury to CIS outweighs any harm the injunction would cause to Defendant, and (4) that the public interest will not be adversely affected by granting the injunction. See All Care Nursing Serv., Inc. v. Bethesda Mem. Hosp., 887 F.2d 1535, 1537 (11th Cir. 1989); Hegarty, 808 F. Supp. at 1557.

13. CIS has established a substantial likelihood of success on the merits on both contract and trade secret grounds. First, the Agreement signed by the Defendant clearly is enforceable under Florida law. See Hegarty, 808 F. Supp. at 1558; Pease, Slip Op. at 7; Merrill Lynch, Pierce, Fenner & Smith Inc. v. Yuster, No. 96-8557-CIV-RYSKAMP (S.D. Fla. 1996) (Report and Recommendation of Magistrate Vitunac at 14-15). See also Citicorp Investment Services v. Hernandez, No. 98-817-CIV-NESBITT (S.D. Fla. 1998) (enforcing identical CIS agreement).

14. Defendant's Agreement with CIS, which provides for the application of New York law, is equally enforceable under New York law. In Leake v. Merrill Lynch, Pierce, Fenner &

4



Smith Inc., 623 N.Y.S.2d 220, 221 (N.Y. App. Div. 1995) the New York Appellate Division

found similar language in another securities brokerage firm's non-solicitation/non-disclosure

agreement enforceable and held that it was error under New York law to deny injunctive

enforcement of the former broker's contract. See 623 N.Y.S.2d at 221 ("[T]he trial court erred

by not entertaining, and granting Merrill Lynch's application for a preliminary injunction due to

the likelihood of the respondent's success of the merits, given the nature of the employment and

non-solicitation agreements, the waiver signed by the petitioner, and the prejudice which would

flow from denying this relief.") (citations omitted). See also Pace Securities v. Pollack, 550

N.Y.S.2d 299 (N.Y. App. Div. 1990). In Citicorp Investment Services v. Biondo, No. 19807/97

(N.Y. Sup. Ct. 1997), the New York Supreme Court upheld CIS's contract:

> Neither the duration (i.e., one year) or scope of the
> restrictions are unduly burdensome (see, Chernoff Diamond
> & Co. v. Fitzmaurice, ___ A.D.2d ___, 651 N.Y.S.2d 504,
> 505). The restrictive covenants do not prohibit respondent
> from pursuing his profession or competing in the general
> marketplace (see Chernoff Diamond & Co. v. Fitzmaurice,
> supra; Pace Securities v. Pollack, 157 AD2d 557, 558-59).
> Moreover, information of the type which is sought to be
> protected under such restrictive covenants has been held to
> be deserving of such protection as trade secrets (see,
> McLaughlin, Piven, Vogel v. Nolan & Co., 114 AD2d
> supra at 173). On this basis, it appears likely that petitioner
> will succeed on the merits.

Citicorp Investment Services v. Biondo, (Slip Op. at 4).

15. In Hegarty, the court reviewed the provisions of another securities firm's contract

containing non-disclosure and non-solicitation provisions similar to the provisions of the contract

Defendant signed with CIS and granted preliminary injunctive relief:

> In Hapney, the court held that under § 542.12 Fla.Stat., now
> § 542.33, an enforceable non-competition agreement "must



AUG-24-98  08:27                                    P.07   R-684   Jub-275
08/24/98     08:46   RUBIN   ASSOCIATES → 7136501720              NO. 963   D07

relate to a legitimate business interest of the employer in order to restrict or impinge upon the right to pursue and earn a living guaranteed by our constitution." *Id.* at 131. The court then listed three categories of recognized interests: (1) trade secrets and confidential business lists; (2) customer goodwill; and (3) extraordinary or specialized training provided by the employer. Applying these criteria, the Court finds that the Account Agreement protects a legitimate business interest held by the Plaintiff.

••••

The *Hapney* court's ultimate holding was that *"trade secrets, customer lists, and the right to prevent direct solicitation of existing customers are, per se, legitimate business interests subject to protection . . . ."*

••••

Having determined that the Plaintiff has a legitimate business interest in the list, the Court must find that the Account Agreement is valid.

808 F. Supp. at 1557-58.

16. Consistent with the court's holding in Hegarty, the Agreement between Defendant and CIS protects the legitimate business interests of CIS in its client relationships, customer goodwill and trade secrets. See also Dyes v. Pioneer Concepts, Inc., 667 So.2d 961, 964 (Fla. Dist. Ct. 1996) (enjoining former employee from soliciting former employer's customers and stating "we conclude that the trial court did not err in its determination that Pioneer Concepts proved its protectible interest in its right to prohibit the direct solicitation of existing customers . . . .").

17. Furthermore, state and federal courts in other jurisdictions also have upheld the contracts of securities firms containing non-solicitation and non-disclosure provisions similar to those in Defendant's Agreement and issued injunctive relief to enforce these contracts, see, e.g., Salvano, 999 F.2d at 211; Dutton, 844 F.2d at 726; Bradley, 756 F.2d at 1048, and have enforced

6



the exact CIS contract signed by Defendant. See, e.g., Citicorp Investment Services v. Blondu, (Slip. Op. at 4).

18. CIS also is likely to succeed on the merits to protect its trade secrets and confidential business information and to prevent unfair competition through the use of such information to CIS's competitive disadvantage. Florida law protects customer lists and information from misappropriation and conversion through injunctive relief.

19. Florida has adopted the Uniform Trade Secrets Act, which provides for injunctive relief to prevent the "actual or threatened misappropriation" of a trade secret and which defines a trade secret as follows:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a)    Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use: and
>
> (b)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

F.S.A. § 608.002-003. Florida law also protects customer lists and customer information from misappropriation and conversion through criminal penalties. See F.S.A. § 812.081(2).

20. In Hegarty, the Court held that the customer list of another securities firm warranted trade secret protection, stating "the Court finds that the [customer] list is a trade secret . . . Plaintiff has a legitimate business interest in the list because it is a trade secret." 808 F. Supp. at 1558.

21. Similarly, in Unistar Corp. v. Child, the Florida Appellate Court reversed the trial court for an abuse of discretion and issued a preliminary injunction on trade secret grounds restraining the

7



AUG-24-98  08:27
08/24/98    08:47    RUBIN  ASSOCIATES → 7136501720          P 09     R-684     Job-275     NO. 963    D09

defendant from contacting and accepting business from any of the customers he serviced while employed with the plaintiff "irrespective of the existence of a contract." 415 So.2d 733 (Fla. App. 3d 1982). Like CIS in this case, the employer therein had invested substantial resources in compiling a list of customers, and the customer list represented the "distillation of a larger list of [potential customers]... reflecting considerable effort, knowledge, time, and expense on the part of the plaintiff." Id. at 734. See also Braman Motors, Inc. v. Ward, 479 So.2d 225, 226 (Fla. App. 3d 1985) (granting preliminary injunction to prevent former employee's use of a confidential customer list); Erik Elec. v. Elliot, 375 So.2d 1136 (Fla. App. 3d 1979) (reversing trial court for failing to accord trade secret protection to plaintiff/employer's customer list).

22. Consistent with the Florida Uniform Trade Secrets Act and the court's holding in Hegarty, courts throughout the country have accorded trade secret status to securities firms' customer lists. See, e.g., IDS Life Insurance Co. v. Sun America, 958 F. Supp. 1258, 1279-80 (N.D. Ill. 1997) ("In this case, plaintiffs claim that defendants are in possession of plaintiffs' records of customer names, addresses, and investment characteristics and are using that information to solicit and serve plaintiffs' customers. We find that plaintiffs' customer lists and files are likely to constitute trade secrets."), aff'd in relevant part, vac. in part, -- F.3d --, 1998 WL 51350 at *6 (7th Cir. February 10, 1998); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Zimmerman, 1996 WL 707107 at * 2 (D. Kan. 1996); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Orbach, 1994 WL 900431 at *6 (E.D. Mich. 1994); IDS Financial Servs. v. Smithson, 843 F. Supp. 415, 418 (N.D. Ill. 1994); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Kramer, 816 F. Supp. 1242, 1246 (N.D. Ohio 1992); Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith Inc., 777 F. Supp. 1349 (N.D. Tex. 1991), aff'd, 948 F.2d 1286 (5th Cir. 1991), cert. denied, 112 S. Ct.

 

AUG-24-98  08:27                                                P.10      R-684      Job-275
08/24/98    08:47   RUB   ASSOCIATES - 7136501720                          NO.963    010

1984 (1992).

23. The Court finds that CIS has taken measures to protect the secrecy of its confidential customer list and customer information which are reasonable under the circumstances, including requiring Defendant to sign an agreement which "demonstrate[s] the importance that [Citicorp] places on the information." See IDS Financial Services v. Smithson, 843 F. Supp. at 418; Merrill Lynch v. Zimmerman, 1996 WL 707107 at *2 (where defendant had signed agreements providing for confidentiality of information, finding that "the plaintiff's evidence also indicates that the defendant was unequivocally aware that the Documents were intended to be confidential").

24. The Court finds, therefore, that CIS has demonstrated a likelihood of success on the merits both to enforce the Defendant's Agreement and also to protect CIS's trade secret customer list and customer information.

25. Next, the Court finds that CIS will suffer irreparable harm absent the entry of injunctive relief.

26. Under Florida law, irreparable harm is presumed when use of customer lists and solicitation of customers occurs. Indeed, Florida law provides that "The violation of an enforceable restrictive covenant creates a presumption of irreparable injury. . ." F.S.A. § 542.335(j). The Florida Trade Secrets Act also specifically provides for the imposition of injunctive relief to prevent "[a]ctual or threatened misappropriation" of a trade secret customer list. See F.S.A. § 668.003.

27. In Hourry, the court expressly held that the breach of a non-solicitation agreement and misappropriation of trade secrets resulted in irreparable harm. stating:

9

 

AUG-24-98  08:27
08/24/98   08:48    RUBIH   ASSOCIATES → 7136501720
P.11    R-684    Job-275
NO.963    P11

Florida courts have repeatedly held that injunctive relief is appropriate where customer lists are involved.   In *Carnahan v. Alexander Proudfoot Co.*, 581 So.2d 184 (Fla. 4th Dist.Ct.App. 1991), the court found that even if irreparable injury *was not presumed*, copying computer disks and soliciting clients would cause irreparable harm . . . . Moreover, the Florida Supreme Court has held repeatedly that where a defendant has breached a covenant not to compete "[t]he Court may award damages . . .but the normal remedy is to grant an injunction. This is so because of the inherently difficult task of determining just what damage is actually caused by the employee's breach of the agreement." *Miller Mechanical, Inc. v. Ruth*, 800 So.2d 212 (Fla. 1974). In *Capraro v. Lanier Business Products, Inc.*, the Florida Supreme Court reiterated that an injunction, not monetary damages, was the proper remedy for a breach of a non-competition agreement.
****

Florida law, therefore, recognizes that monetary damages are generally an inadequate remedy where an employee breaches a non-competition agreement.

808 F. Supp. at 1559.

28.  The court in *Hevarty* also found that irreparable harm resulted from the breach of a non-solicitation and non-disclosure agreement because "monetary damages cannot compensate Plaintiff for Defendant's unilateral breach of client confidentiality...[or] the example Defendant's action set for other Merrill Lynch employees . . . ." 808 F. Supp. at 1560, n.2. See also *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Stidham*, 658 F.2d 1098, 1102 n.8 (5th Cir., Unit B, 1981) ("The injury here is such that damages could not adequately compensate. Were defendants permitted by the law to exploit the clientele of their former employers, every investment that reasonably flowed from the exploitation should be included in the damages award. How such a figure could be arrived at escapes us."); *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (finding in a post-employment restrictive covenant case that "the loss of

10



AUG-24-98  08:27                              P.12     R-884    Job-275
08/24/98     08:48     RUB!   ASSOCIATES - 7136501720               NO.963    D12

customers and goodwill is an 'irreparable' injury"). Accord Bradley, 756 F.2d at 1055 ("Merrill
Lynch faced irreparable, non-compensable harm in the loss of its customers" as a result of
defendant's breach of non-solicitation agreement); Merrill Lynch, Pierce, Fenner & Smith Inc. v.
Patinkin, 1991 WL 83163 (N.D. Ill. 1991) ("The Court believes that the denial of the extension
of the TRO under the circumstances presented in this case would leave Merrill Lynch vulnerable
to the same conduct from other employees. Hence, the potential harm plaintiff faces, on several
levels, is enormous.").

29.   In comparison to this irreparable harm to CIS, the burden of injunctive relief on
Defendant is modest. He need only comply with the terms of the reasonable agreement he freely
entered into with CIS and refrain from misusing CIS's trade secret information. Defendant is
free to solicit business from the public at large and to service existing customers of A.G.
Edwards. See, e.g., Kramer, 816 F. Supp. at 1248 ("[T]he restriction upon Mr. Kramer is
limited to his existing customers and then only for a period of one year. There is nothing in the
agreement which prohibits Mr. Kramer from continuing with his occupation as a broker in the
securities industry.").

30.   The Court also finds that issuance of an injunction will promote the public interest in
(i) protection of trade secret client lists and other confidential and trade secret information and
(ii) enforcement of reasonable contracts. As the court noted in granting another securities firm
injunctive relief to enforce the non-solicitation and non-disclosure provisions of its contract,
"Florida's public policy clearly favors protecting Plaintiff's interests. See, e.g., Fla.Stat. §§
542.33, 608.001, 812.081." Hekany, 808 F. Supp. at 1560. See also Zimmerman, 1996 WL
707107 at *2 ("[T]here is a strong public interest in favor of protecting trade secrets.");

11



Johannsman v. Merrill Lynch, Pierce, Fenner & Smith Inc., 1993 WL 835533 (E.D. Ky. 1993) ("The court is of the opinion that it would be in the public interest to enforce the reasonable term of employment contracts."); Kramer, 816 F. Supp. at 1248 ("To deny injunctive relief in this case would ... jeopardize the integrity of the securities industry to the detriment of the public interest [and] ... would cast doubt on the integrity of contractual agreements.").

31. In addition, the Court finds that Defendant must be enjoined from accepting business or account transfers from clients whom he wrongfully solicited prior to the Court's temporary restraining order. This relief is expressly provided for in Defendant's Agreement which states that he will not "do business with" CIS customers. (See Exhibit "A" to Complaint at ¶ 7(a)).

32. Furthermore, to hold otherwise would allow Defendant to reap the benefits of his unlawful solicitations and encourage other similarly situated employees to engage in the same conduct in the future. See Orbech, 1994 WL 900431 at *9; Zimmerman, 1997 WL 707107 at *2; Merrill Lynch, Pierce, Fenner & Smith Inc. v. Price, 1989 WL 108412 (Del. Chanc. 1989).

33. In conclusion, CIS has satisfied the elements for, and is entitled to, preliminary injunctive relief.

12



AUG-24-98  08:27
08/24/98    08:49    RUBI    ASSOCIATES → 7136501720          P.14      R-004    Job-275          NO. 963    D14
                                                                                                  ＠015

## PRELIMINARY INJUNCTION ORDER

AND NOW, ·                              after thorough consideration of all the

arguments and evidence presented by counsel for the parties, and for the reasons set forth in the

accompanying findings of fact and conclusions of law, it is hereby ORDERED that:

        1.     Defendant Perez is enjoined and restrained, directly or indirectly, and

whether alone or in concert with others, including any agent, officer, representative or

employee of his current employer, A.G. Edwards & Sons, Inc., from:

        a)    soliciting any business from any client or prospective client

of CIS whom Defendant served

                        and, further, from accepting any

business or account transfers from any of said clients or prospective clients whom

Defendant or A.G. Edwards on Defendant's behalf has solicited at any time in the

past for the purpose of doing business with A.G. Edwards (excluding (i)

Defendant's immediate family and (ii) clients with whom Defendant had a

business relationship prior to his association with CIS, provided that no Company

Information (as defined by Defendant's Registered Representative Agreement, has

been or is used in soliciting said clients); and

        b)    using, disclosing, or transmitting for any purpose, including

solicitation of said customers, the information contained in the records of CIS and its

affiliates, including, but not limited to, the names, addresses, and financial information of

customers or prospective customers of CIS or its affiliates.

        2.     To the extent that Defendant has not already done so pursuant to the

13



Court's temporary restraining order, Defendant, and anyone acting in active concert or participation with him, including any agent, employee, officer or representative of A.G. Edwards, is further ordered to return to CIS any and all records, documents and/or information pertaining to CIS customers whether in original, copied, computerized, handwritten or any other form, and to purge any and all such information from their possession, custody, or control within 24 hours.

    3.    This Order shall remain in full force and effect pending a determination on the merits by a duly appointed arbitration panel pursuant to Rule 10335(g) of the National Association of Securities Dealers Code of Arbitration Procedure.

    4.    The security given by CIS in the amount of Five Thousand Dollars ($ 5,000.00) in support of the temporary restraining order issued by the Court shall remain in effect in support of this preliminary injunction order.

    SIGNED at West Palm Beach, Florida this 27 day of May, 1998.

                                        _____
                                        Kenneth L. Ryskamp
                                        United States District Judge

14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

96 OCT -b AH I0

PRUDENTIAL SECURITIES INCORPORATED,     )
                                        )
                        Plaintiff,      )
                                        )
        v.                              )        No. 96-1996-Civ. T- 17-A
                                        )
BLAKE MALLICK,                          )
                                        )
                        Defendant.      )

## TEMPORARY RESTRAINING ORDER

This matter came to be heard on October 9, 1996 on plaintiff's Motion for Temporary Restraining Order. The Court has considered Prudential Securities' Verified Complaint, the memorandum in support of plaintiff's application and other written submissions of the parties, and heard the arguments of counsel.

THE COURT HEREBY FINDS AS FOLLOWS:

   1.    This is an action to enforce the Financial Advisor in Training Agreement ("FAIT Agreement") executed by defendant Blake Mallick ("Mallick") at the commencement of his employment with plaintiff Prudential Securities Incorporated ("Prudential Securities"), and other related claims.

   2.    The FAIT Agreement contains various restrictions on Mallick's ability to use Prudential Securities' records or otherwise compete with Prudential Securities after leaving Prudential Securities' employ.

   3.    Prudential Securities has sought a temporary restraining order seeking the enforcement of Mallick's duties and obligations.

   4.    Mallick received actual oral and written notice of Prudential Securities' motion for temporary restraining order.

5.    Prudential Securities will suffer irreparable injury and loss in the event that a temporary restraining order is not granted.

6.    Such injury outweighs any harm this order will inflict on the defendant.

7.    It is more likely than not that Prudential Securities will succeed on the merits at trial.

8.    Prudential Securities has no adequate remedy at law.

IT IS HEREBY ORDERED THAT:

A.    Upon the posting of a bond in the amount of $ 2000.00 this temporary restraining order shall be issued.

B.    Defendant Mallick is temporarily enjoined and restrained, directly or indirectly and whether alone or in concert with others, from (a) using, disclosing or transmitting proprietary software and other confidential information contained in Prudential Securities' records or files, whether in the form of hard copy or information stored on a computer hard drive or disk, including the names, addresses and financial information of any Prudential Securities' customers, and (b) soliciting or accepting business from any Prudential Securities' customers whom Mallick served or whose names became known to Mallick while in Prudential Securities' employ.

C.    Defendant is further ordered to deliver any and all original Prudential Securities' records and software or copies thereof, including electronic or computerized versions (including all diskettes) thereof, to the offices of plaintiff's counsel by 5:00 p.m. on October 9, 1996, unless otherwise changed at the hearing.

D.    This order will expire at 5:00 p.m. on October 14, 1996 unless extended by further order of this Court. Defendant shall appear before this Court on October 9, 1996 at 10:00 o'clock a.m. and show cause why a preliminary injunction should not be entered according to the terms and conditions set forth above. If defendant intends to submit papers in

opposition to the entry of a preliminary injunction, he shall file and serve copies of those papers by October 8, 1996. Plaintiff shall file its reply papers, if any, by October ___ 1996.

This Order is entered to maintain the status quo and is without prejudice to the merits, the claims or defenses which have been or may be asserted in this litigation.

Dated: October __ 1996

ENTERED:

_____
District Judge

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

SSCUH1-61386_1 DOC



USDC TAMPA
@002/005

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

        Plaintiff,

vs.                    Case No. 96-1042-CIV-T-24(B)

DON C. OPPERMAN,

        Defendant.

_____/

## O R D E R

This cause is before the Court upon consideration of the
Verified Complaint (Doc. No. 1, filed May 28, 1996) and Emergency
Motion of Merrill Lynch for Temporary Restraining Order and/or
Preliminary Injunction (Doc. No. 2, filed May 28, 1996).  The Court
having determined that:

1.   Plaintiff will suffer immediate irreparable harm and loss
if Defendant is permitted to (a) convert the property of Merrill
Lynch to Defendant's own personal use and benefit and that of
Defendant's new employer, (b) solicit Merrill Lynch accounts,
clients and customers, and (c) violate the terms of his employment
agreement and agreement to arbitrate;

2.   Plaintiff has no adequate remedy at law; and

3.   Greater injury will be inflicted upon Plaintiff by the
denial of immediate temporary injunctive relief without notice than
would be inflicted upon Defendant by granting of such relief, and
an injunction serves the public interest;

 

'O'8'''  228 2543          USDC TAMPA                    @003/005

IT IS HEREBY ORDERED AND DECREED THAT:

1.   A Temporary Restraining Order issue immediately without notice and that Plaintiff post security with the Clerk of the Court in support thereof in the amount of $10,000.00 by no later than the 31th day of May, 1996;

2.   Defendant is enjoined and restrained, directly and indirectly, and whether alone or in concert with others, including any officer, agent, representative or employee of Defendant's current employer, Investment Management Research, from:

a)   soliciting any business from any client of Merrill Lynch whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch, and from accepting any business or account transfers from any of said clients whom Defendant has solicited in the past for the purpose of doing business with Defendant's present employer including, without limitation, all individuals and entities referenced in Exhibit "C" to Plaintiff's Complaint (excluding Defendant's immediate family);

b)   using, disclosing or transmitting for any purpose, including solicitation of clients, information contained in the records of Merrill Lynch, including, but not limited to, the names, addresses and financial information of clients including, without limitation, the clients referenced in said Exhibit "C"; and that all original records, copies and/or reproductions and/or computerized recordings thereof, in whatever form, be returned to Plaintiff immediately;

2

 

USDC TAMPA

@004/005

3.   Plaintiff is granted leave to commence deposition discovery and other related discovery immediately in aid of a preliminary injunction hearing before the Court;

4.   Pending the preliminary injunction hearing before this Court, and pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties are directed to commence and to proceed with an arbitration in accordance with the Constitution and Rules of the New York Stock Exchange or the National Association of Securities Dealers Code of Arbitration Procedure without waiver of any of the parties' rights thereunder;

5.   Pursuant to 28 U.S.C. § 636(b)(1)(B), Plaintiff's motion for preliminary injunction is hereby REFERRED to the Honorable Thomas G. Wilson, who shall submit proposed findings of fact and recommendation as to the appropriate disposition of the motion for preliminary injunction. A hearing will be held before Judge Wilson on the 7th day of June, 1996, at 10:00 a.m., in Room 202 of the United States District Courthouse, 611 North Florida Avenue, Tampa, Florida on the Plaintiff's motion for preliminary injunction.

6.   Plaintiff shall obtain immediate service of process upon the Defendant pursuant to Rule 4, Fed. R. Civ. P. In addition, Plaintiff shall serve all papers filed with the Court, including orders of the Court.

7.   Service of all papers and affidavits upon which the moving party intends to rely must be made at least five (5) full days prior to the hearing pursuant to Rule 6(d), Fed. R. Civ. P.

3

8.   Any party opposing the motion for preliminary injunction must file with the Clerk's Office and deliver to the moving party, all counter and opposing affidavits, and a responsive brief, not later than the close of business on the day preceding the day of the hearing.

This Temporary Restraining Order is entered this 29th day of May, 1996, at __4:40__ p.m., in Chambers in Tampa, Florida, and shall expire on the 8th day of June, 1996, at __4:40__ p.m., unless extended or sooner terminated by order of the Court.

DONE AND ORDERED at Tampa, Florida, this 29th day of May, 1996.

Susan C. Buckley
SUSAN C. BUCKLEW
United States District Judge

Copies to:

The Honorable Thomas G. Wilson
Counsel of Record

4



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MERRILL LYNCH, PIERCE,
FENNER & SMITH INC.,

    Plaintiff,

    v.

STEPHEN C. PEASE,

    Defendant.

_____/

NO. 96-667-CIV-NESBITT

FILED by _____ D.C.

APR 12 1996

CARL___ WANCE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

ORDER ENTERING
PRELIMINARY INJUNCTION

THIS CAUSE has come to this Court upon Plaintiff's Emergency Motion for Injunctive

Relief filed on March 13, 1996. This Court entered a Temporary Restraining Order on March

18, 1996. The Court held a Preliminary Injunction hearing on March 26, 1996. After careful

consideration of the parties' extensive memoranda, and after hearing testimony and argument at

the March 26, 1996 hearing, this Court finds as follows:

I.    PRELIMINARY CONSIDERATIONS

As a preliminary jurisdictional matter, this Court finds that disputes between brokerage

firms, such as Plaintiff, and their employees, such as Defendant, must be submitted to arbitration

pursuant to the rules and regulations of sponsoring organizations such as the New York Stock

Exchange ("NYSE") or National Association of Securities Dealers ("NASD"). However, despite

such obligations, this Court is not divested of equity jurisdiction and is empowered to consider



and grant, where appropriate, requests for injunctive relief in order to preserve the status quo. See generally Merrill Lynch v. Hegarty, 2 F.3d 405 (11th Cir. 1993) aff'g 808 F. Supp. 1555 (S.D. Fla. 1992); see generally Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373 (6th Cir. 1995); Merrill Lynch v. Bradley, 756 F.2d 1048 (4th Cir. 1985). The parties' "agreement to arbitrate" in this case consists of an Account Executive Trainee Agreement executed by defendant on or about October 20, 1985 which contains defendant's consent to injunctive relief "pending the outcome of any arbitration proceeding", and the NASD Code of Arbitration Procedure ("NASD Code") which expressly provides in Section 47 thereof that Merrill Lynch has the right to seek injunctive relief in court pending a hearing on the merits before a panel of NASD arbitrators.

The provisions of NASD Code Section 47(g) became operative under the parties' agreement to arbitrate both on March 13, 1996, when Merrill Lynch filed for injunctive relief pursuant to the terms of the Account Executive Trainee Agreement, and on March 18, 1996 by this Court's entry of a Temporary Restraining Order against Defendant. Pursuant to Section 47(g), the effect of an injunction issued by a Court is that any subsequent arbitration proceeding "concerning the matter of the injunction" must proceed in accordance with "the time schedules and procedures specified by the arbitration panel appointed under" the NASD Code. Since it was this Court that entered the injunction against Defendant, not an arbitrator providing interim injunctive relief, the hearings in arbitration under the parties' agreement to arbitrate must proceed under NASD Code § 47(g). Accordingly, Defendant's arguments that he is entitled to the procedures and timetables contained in NASD Section 47(d) are without merit and are hereby rejected.

- 2 -



In addition, Defendant expressly consented in Paragraph 4 of his Account Executive Trainee Agreement to the issuance of injunctive relief "pending the outcome of any arbitration hearing" on the merits. In so doing, Defendant expressly consented to status quo injunctive relief pending a hearing on the merits in arbitration which, consistent with its rights under NASD Code § 47, Merrill Lynch chose to pursue before this Court. This specific term in the parties' agreement takes precedence over any inconsistent NASD arbitration rule. See, e.g., Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830, 831-32 (11th Cir. 1991). Merrill Lynch elected to present the issue of injunctive relief pending arbitration in this Court as it has the right to do pursuant to the agreement of the parties. Id. By properly exercising its right to proceed before the Court, Merrill Lynch is entitled to avail itself of the Court's jurisdiction on all matters of preliminary injunctive relief pending a resolution on the merits by a panel of NASD arbitrators. In cases involving any party's election to seek preliminary injunctive relief before a Court, the NASD Code provides for hearings "on the merits" to proceed "concerning the matter of the injunction" under the terms set forth in NASD Code § 47(g). Therefore, even if the NASD's enactment of Section 47 might otherwise have allowed interim hearings in arbitration prior to a final arbitration hearing on the merits, then any such term would be superseded by the specific term of Defendant's express consent to the issuance of preliminary injunctive relief "pending the outcome of any arbitration" on the merits and Merrill Lynch's election to seek such relief prior to a hearing on the merits in arbitration before this Court. See NASD Code § 47(g); Szuts, supra; Merrill Lynch v. Dutton, 844 F.2d 726 (10th Cir. 1988).

 

Accordingly, under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, the Court's jurisdiction is expressly reserved under the parties' agreement to arbitrate, consisting of the Account Executive Trainee Agreement and NASD Code § 47.

## II.   FINDINGS OF FACT

1.   Plaintiff, MERRILL LYNCH, PIERCE, FENNER & SMITH, is a licensed brokerage firm that trains, licenses and registers its account executives, and provides facilities, investment and sales resources, sales support, and a multitude of operations systems.

2.   Defendant, STEPHEN C. PEASE, signed an Account Executive Trainee Agreement ("the Agreement") at or about the time he became employed with Merrill Lynch in 1985, which agreement provides in part as follows:

1.   All records of Merrill Lynch, including the names and addresses of its clients and prospective clients are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination of my employment for any reason with Merrill Lynch. None of such records, nor any part of them is to be removed by me from the premises of Merrill Lynch either in original form or in computerized, duplicated or copied form, except with the permission of an office manager for the purpose of conducting the business of Merrill Lynch and the names, addresses, and other facts in such records are not to be transmitted verbally, in writing, or in computerized form by me except in the ordinary course of conducting business for Merrill Lynch. All of said records or any part of them are the sole proprietary information of Merrill Lynch and shall be treated by me as confidential information of Merrill Lynch.

2.   In the event of termination of my services with Merrill Lynch for any reason, I will (i) not solicit, for a period of one year from the date of termination of my employment, any of the clients or prospective clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch in any office of Merrill Lynch in which I was employed, and who reside within the same state as the Merrill Lynch office or offices in which I was employed, and (ii) return any original records and purge or destroy any computerized, duplicated, or copied records referred to in paragraph 1 which have been removed from the premises of Merrill Lynch in any form. In the event that any of the provisions contained in this paragraph and/or paragraph (1) above are violated I understand that I will be liable to Merrill Lynch for any damage and/or injury, including but not limited to reasonable attorney's fees, caused thereby and,

- 4 -

 

in the event that damages are an inadequate remedy, Merrill Lynch will be entitled to injunctive or other equitable relief.

(emphasis in original).

    3.    Paragraph 4 of the Agreement further contains Defendant's consent to the entry of injunctive relief against him to prohibit his breach of these provisions pending arbitration:

> I further consent to the issuance of a temporary restraining order or a preliminary or permanent injunction to prohibit the breach of any provision of this contract, or to maintain the status quo pending the outcome of any arbitration proceeding which may be initiated.

(emphasis in original).

    4.    The Account Executive Trainee Agreement does not prohibit the employee from working as a broker in the event the employee leaves Merrill Lynch's employ.

    5.    Defendant was a successful Account Executive during his tenure as an employee of Merrill Lynch, having serviced over 900 customers with assets in excess of $29 million which generated over $286,000 in commission revenues in 1995.

    6.    At the time he left Merrill Lynch's employ, on or about March 8, 1996, Defendant had in his possession copies of approximately 395 monthly statements and a large stack of index cards with mailing labels for approximately 535 customers, both of which contained the names and addresses of customers serviced by him while at Merrill Lynch. These documents also contained information that provided Defendant with the customer account balances, investment objectives and financial backgrounds. Defendant also had in his possession

- 5 -

 

a listing of over 425 active customer accounts serviced by Defendant at Merrill Lynch and the 1995 revenues and trading by product type associated with each such account.

7.    Approximately two weeks before beginning his employment with a competing brokerage firm, Prudential Securities, Inc., Defendant provided Prudential with portions of the monthly statements disclosing customers' names, addresses, Merrill Lynch account numbers and Merrill Lynch account balances. Prudential used these records and mailed out by overnight mail, solicitation letters and account transfer forms to a minimum of approximately 80-100 former Merrill Lynch clients who had been serviced at Merrill Lynch by Defendant.

8.    Shortly after beginning his employment with Prudential, Defendant contacted by phone approximately 50 - 100 former Merrill Lynch clients who had been serviced at Merrill Lynch by Defendant for the purpose of soliciting them to do business with him at his new employer.

III.    CONCLUSIONS OF LAW

After careful consideration of the parties' arguments and the relevant case law, the Court has determined that Merrill Lynch has met the four requirements for a preliminary injunction. Haitian Refugee Center, Inc. v. Nelson, 872 F.2d 1555, 1562 (11th Cir. 1989) ("four requirements for preliminary injunctive relief are: (1) a substantial likelihood that the movants will ultimately prevail with the merits; (2) that they will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to the movants outweighs the potential harm to the opposing party; and (4) that the injunction if issued, would not be adverse to the public interest"), aff'd 498 U.S. 479 (1991).

- 6 -

 

A.      Likelihood of Success on the Merits

Plaintiff has shown a substantial likelihood of success on the merits.  The Merrill Lynch employment contract signed by Defendant demonstrates that Merrill Lynch has a clear right to relief in the event Defendant breaches the agreement following the termination of his employment.  This contract is narrowly tailored and it is valid and enforceable under Florida law.  See Fla. Stats. §§ 542.33, 812.081 and 688.002; see generally Merrill Lynch v. Hegarty, 808 F.Supp. 1555 (S.D. Fla. 1992), aff'd 2 F.3d 405 (11th Cir. 1993).  Defendant has argued that Merrill Lynch's likelihood of success should be measured by whether the Court anticipates that Defendant's employment agreement will ultimately be enforced by the properly appointed arbitrators who will ultimately hear this matter and has submitted collected arbitration decisions which he claims support the proposition that arbitrators will not enforce such contractual restrictions.  The Court is not satisfied that Defendant's arbitration submissions require such a conclusion and, in any event, believes that the duty of both the arbitrators and the Court is to follow the law.; E.g., Shearson/American Express, Inc. v. McMahon, 107 S.Ct. 2332, 2340 (1987) ("there is no reason to assume at the outset that arbitrators will not follow the law"); U.S. Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361 (1960) (Arbitrators "are bound to apply the law and 'not to dispense [their] own brand of justice'").  The Court is satisfied based on its analysis of Florida law that Plaintiff has established a likelihood of success on the merits.  E.g., Fla. Stat. §§ 542.33, 812.081, 688.002; Merrill Lynch v. Hegarty, supra.

- 7 -



B.   Irreparable Harm

The Court finds that Merrill Lynch will suffer irreparable harm and injury if Defendant is permitted to solicit Merrill Lynch customers and to convert Merrill Lynch records, account information, and customer accounts for Defendant's own personal use and benefit and/or the benefit of Defendant's agent or employer.  Ferrero v. Associated Materials, Inc., 923 F.2d 1441 (11th Cir. 1991); Merrill Lynch v. Hegarty, 808 F.Supp. 1555 (S.D. Fla. 1992), aff'd 2 F.3d 405 (11th Cir. 1993).

C.   The Balance of Interests

The Court finds that the benefit to plaintiff in granting the injunctive relief requested far outweighs the harm to Defendant.  An injunction would protect the goodwill and investment of Merrill Lynch and confidentiality of its client lists.  The resulting harm to Defendant, while not insignificant, arises simply from requiring Defendant to fulfill his contractual obligations.  Defendant, who had no prior securities industry experience, signed the Account Executive Trainee Agreement and obtained the benefits accruing thereto.  Defendant may still pursue his career in the profession and may service customers not solicited from Merrill Lynch's client base.  Defendant simply may not solicit customers of Merrill Lynch for his own benefit or that of his new employer.  Fla. Stat. § 542.33.

D.   Public Interest

Finally, the issuance of an injunction in this case is not adverse to the public interest.  The injunction would promote the public interest in enforcing valid contractual agreements, protecting the investments of employers, and would promote Florida's public policy of safeguarding confidential customer lists.  See, e.g., Fla. Stat. §§ 542.33, 812.081.  The

- 8 -



provision of this Order enjoining Defendant from accepting business or account transfers from customers Defendant had solicited prior to the entry of the Temporary Restraining Order is necessary to ensure that Merrill Lynch receives the benefit of its agreement with Defendant, to enforce the public interest in the enforcement of reasonable contracts, and to prevent Defendant from violating the paramount equitable principal that "one should not benefit from his own wrongdoing."

ACCORDINGLY, after a careful review of the record and memoranda filed by the parties' counsel, after having heard argument, and after having held a preliminary injunction hearing, and after being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED as follows.

1. Plaintiff's motion for preliminary injunctive relief is hereby GRANTED. Defendant is enjoined and restrained, directly and indirectly, and whether alone or in concert with others, including any agent, representative or employee of Defendant's current employer, Prudential Securities, Inc., from:

a. soliciting any business from any client of Merrill Lynch whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch, and from accepting any business or account transfers from any of said customers whom Defendant has solicited in the past for the purpose of doing business with Defendant's present employer (excluding Defendant's immediate family and customers residing outside the State of Florida);

b. using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch including,

- 9 -

 

but not limited to, the names, addresses, and financial information of clients serviced by Defendant while in the employ of Merrill Lynch;

     2.     Defendant is ordered to immediately return to plaintiff all original records and copies and/or computerized transcriptions or other reproductions thereof, in whatever form;

     3.     Pursuant to the requirement of Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, the parties are directed to proceed with arbitration before the NASD pursuant to NASD Code 47(g) in accordance with "the terms of the parties' agreement" to arbitrate. 9 U.S.C. § 3.

     4.     The Court retains continuing jurisdiction of this matter to ensure compliance with the terms of this Order.

     DONE AND ORDERED in Chambers, at the United States District Court, Florida, this 11 day of April, 1996.

                                _____
                                  United States District Judge

Copies furnished to:
All counsel of record

- 10 -

 

IN THE CIRCUIT COURT OF
THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY

CASE NO. CL 96   000943

SMITH BARNEY INC.,

      Plaintiff,

vs.

GARY J. GROSS, JOHN L. PAGE, and
BRIAN MICHAEL BURNS,

      Defendants.

_____

### TEMPORARY INJUNCTION

1.    This matter came before the Court upon Plaintiff SMITH BARNEY INC.'s

Verified Complaint and Plaintiff's Motion for Temporary Injunction on this ___ day of

February, 1996, filed pursuant to Fla. R. Civ. P. 1.610.  Defendants GARY J. GROSS

("GROSS"), JOHN L. PAGE ("PAGE") and BRIAN MICHAEL BURNS ("BURNS") and/or

their counsel have been given notice of the hearing of this matter. This Court has

determined that good cause has been shown for the entry of a temporary injunction in

that:

    A.   Plaintiff has a clear legal right or interest in the subject matter of this suit;

    B.   Absent injunctive relief, Plaintiff and its customers will suffer immediate irreparable harm;

    C.   There is a substantial likelihood that Plaintiff will succeed on its claim that 1) Defendants have solicited Plaintiff's clients using misappropriated client lists and other trade-secret and confidential information of the Plaintiff and/or information derived therefrom; and 2) Defendants GROSS and BURNS  have solicited Plaintiff's clients in breach of reasonable nonsolicitation agreements, which are enforceable by Plaintiff;



D.    Greater injury will be inflicted upon Plaintiff by the denial of temporary injunctive relief than would be inflicted upon Defendants by the granting of such relief, and an injunction serves the public interest, including customers of SMITH BARNEY who have not authorized or consented to the release of confidential information.

It is therefore ORDERED, ADJUDGED AND DECREED that:

1.    Defendants GARY J. GROSS and BRIAN MICHAEL BURNS and all of their respective agents, representatives, officers, directors, partners, servants, employees, attorneys and all other persons in active concert or participation with them, including RAYMOND JAMES & ASSOCIATES, INC. and its employees, are ENJOINED for six (6) months or until further order of this Court from soliciting any of the clients whose accounts they serviced or whom they learned of at SMITH BARNEY or accepting business from any customer so solicited.

2.    Defendants GARY J. GROSS, JOHN L. PAGE, and BRIAN MICHAEL BURNS (collectively, "the Defendants") and all of their respective agents, representatives, officers, directors, partners, servants, employees, attorneys and all other persons in active concert or participation with them, including RAYMOND JAMES & ASSOCIATES, INC. ("RAYMOND JAMES") and its employees, are ENJOINED until further order from this Court from:

A.    Destroying, mutilating, concealing, altering or disposing of any of the books, records, documents, contracts, agreements, and other property of the Plaintiff which were wrongfully removed from the business premises of the Plaintiff (collectively, "Plaintiff's Trade Secret Documentation");

B.    Destroying, mutilating, concealing, altering or disposing of any information derived from Plaintiff's Trade Secret Documentation, including such information contained in any computer owned or

- 2 -




controlled by the Defendants or persons acting in concert with them, including customer information stored by means of "Broker's Ally";

C.  Using, accessing, downloading, copying, disclosing, transmitting, reviewing, distributing, discussing, transferring, commenting or relying on or referring to any documents, or parts thereof, or any information contained in the records of SMITH BARNEY, including but not limited to, any: customer lists (or other documents identifying the name, address, telephone number, social security numbers, financial information, trading activities, net worth, income, investment history of a customer of SMITH BARNEY), gross commission reports, prospecting or "lead lists", lists, cross-reference or holding pages, profit and loss statements, budgets, account transfer forms, new account forms or any other documents, materials or information that discuss, reference, summarize, identify or relate, directly or indirectly, to the records of SMITH BARNEY, including any information contained on any computer hard drives or discs ("Trade Secret Documentation");

D.  Soliciting customers or clients of the Plaintiff using any of the "Trade Secret Documentation," or other secret proprietary or customer information contained in, or directly or indirectly, derived from SMITH BARNEY;

E.  Accepting any business from the clients or customers of Plaintiff which business was obtained as a result of Defendants' solicitation or other improper use of Plaintiff's Trade Secret Documentation, or any such information contained on any computer hard drive or floppy disc.

3.  Defendants are hereby ORDERED to return immediately to the Plaintiff any and all of Plaintiff's Trade Secret Documentation, including any such information contained on any computer hard drive or floppy disc. Such documents and information to be returned shall include, but not be limited to, highly confidential "trade secret" information, including customer lists and similar documents (both hard copy and on computer), taken without authorization from the Boca Raton offices of SMITH BARNEY by DEFENDANTS, acting as co-conspirators with, and/or agents or employees of, their

 

new employer, RAYMOND JAMES, and supplied by them to their new employer, RAYMOND JAMES.

4.     This Temporary Injunction shall become effective upon the filing with the Clerk of this Court by the Plaintiff of a bond in the amount of $10,000.00, conditioned for the payment of all costs and damages sustained by the Defendants as determined by final judgment after appeal, if any, to have resulted from the wrongful issuance of this Temporary Injunction.

5.     This Temporary Injunction shall remain in full force and effect until further order of this Court.

6.     Service of this Temporary Injunction by telecopy upon the Defendants or their counsel is effective service.

Entered this the _____ day of February, 1996.

_____
CIRCUIT COURT JUDGE

<WP>F:\_\1735\TEMP-INJ.OR2

- 4 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 94-8703-CIV-HURLEY

EDWARD S. BOSLOW, III,

    Plaintiff,

vs.

MERRIL LYNCH, PIERCE, FENNER &
SMITH, INC.

    Defendant

FILED by _____ D.C.

DEC 2 7 1994

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### ORDER EXTENDING TEMPORARY RESTRAINING ORDER

THIS CAUSE comes before the court sua sponte. The court
entered a temporary restraining order on December 23, 1994.
Because the court will reconvene on January 2, 1995, it is
necessary to extend the TRO for an additional 10 day period.
It is hereby

ORDERED and ADJUDGED that the temporary restraining order
issued on December 23, 1994, will remain effective until
January 13, 1995.

DONE and SIGNED in Chambers at West Palm Beach, Florida
this ___ day of December, 1994.

_____
Daniel T. K. Hurley
United States District Judge

Copies furnished to:
CHRISTINA E. LAMIA, ESQ., 240 S. Pineapple Ave., P.O. Box
49948, Sarasota, FL 34230-6948
RUBIN & ASSOCIATES, 10 S. Leopard Bldg., Ste. 202, Paoli, PA
19301

 

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 93-6264-CIV-RYSKAMP

MERRILL LYNCH, PIERCE, FENNER, &
SMITH, INC.,

    Plaintiff,

v.

STEPHEN R. UNGER,

    Defendant.

_____/

FILED by _____ D.C.

APR 1 3 1993

T. G. CHELEOTIS
CLERK U.S. DIST. CT.
S.D. OF FLA.-W.P.B.

## ORDER GRANTING PRELIMINARY INJUNCTION

THIS CAUSE came before the Court upon Plaintiff's Motion for a Preliminary Injunction. The Court held a hearing in open court on April 12, 1993, in which both parties presented oral argument. The parties agreed that this Court should rule on a preliminary injunction without further hearing, and upon the affidavits submitted to the Court. The Court has considered the Motion and the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED that the motion is GRANTED. The Court finds that Plaintiff Merrill Lynch has shown that:

(1) Plaintiff will suffer irreparable harm and loss if Defendant is permitted to continue to solicit Merrill Lynch's proprietary clients who were reassigned from other Merrill Lynch brokers or who called in response to Merrill Lynch advertising and solicitation programs such as those eleven enumerated on page 4 of

3                           C

Plaintiff's Motion for a TRO and Preliminary Injunction;

(2) Plaintiff has no adequate remedy at law;

(3) the balance of harms favors the issuance of the order Plaintiff seeks;

(4) although Plaintiff's case is not so strong as that presented to Judge Nesbitt in Merrill Lynch v. Hagerty, 92-8642-CIV-NESBITT, Order file dated October 27, 1992, the Plaintiff has shown a substantial likelihood of success on the merits.

In Hagerty, Defendant had signed an "Account Executive Training Agreement" whose terms were stronger and more explicit than the four covenants which Plaintiff seeks to enforce in this case.  The Training Agreement in Hagerty contained a specific one year ban on solicitation of "any of the clients or prospective clients whom [defendant] served or whose names became known to [defendant] while in the employ of Merrill Lynch".

The language of the "Guidelines for Business Conduct" which Stephen Unger signed is more cautionary and precatory than prohibitive and clearly obligatory.

> Merrill Lynch's assets include more than its capital . . . . employees will use these assets only for the purposes intended and not for their personal benefit unless they have been approved for general employee or public use. This even extends to business opportunities that come to employees as a result of their employment--they are the proprietary opportunities of Merrill-Lynch.

Exhibit A to Plaintiff's Complaint.

The Compliance outline submitted is even less specific in relation to the present cause of action.  Plaintiff has not alleged facts that would support a conclusion that Defendant violated

3                         c

client confidentiality by his actions.   The Conflict of Interest
form reiterates the terms of the "Guidelines", with special
reference to "confidential information or business secrets."  The
fourth document which Unger signed is an untitled promise to
maintain "the security of corporate information or data" to which
Defendant might have had access while employed by the Firm.

This Court concludes that the instant case turns (1) on
whether or not Defendant took computer lists of Merrill Lynch's
proprietary business opportunities, and (2) whether such lists
constitute "business secrets" covered by the terms of the memoranda
which Defendant Unger signed.

Judge Nesbitt, in Hagerty, relied on the definition of
recognized business interests provided in Hapney v. Central Garage,
Inc., 579 So.2d 127 (Fla.App.2 Dist. 1991).  Hapney equated "trade
secrets and customer lists," holding that "the right to prevent
direct solicitation of existing customers are per se legitimate
business interests subject to protection."  Id. at 134.  From the
standpoint of a preliminary injunction, the Court's analysis need
proceed no further.

For all the foregoing reasons, it is hereby
ORDERED  AND  ADJUDGED  that  a  PRELIMINARY  INJUNCTION  ISSUE
IMMEDIATELY and that Plaintiff post security thereof in the amount
of $175,000[1] by no later than the 19th day of April, 1993;

---

[1]  The Court derives this figure from Plaintiff's estimate
of the value to Defendant of the incentives offered him by
Prudential.  Should the arbitration panel of the New York Stock
Exchange find that Defendant acted properly, the maximum amount
of Defendant's injury could be the value of the benefits offered

Defendant is enjoined until further order of this Court from:

(a) soliciting any business from any client of Merrill Lynch whose name became known to Defendant for the first time while in the employ of Merrill Lynch; this restriction excludes Defendant's relatives and immediate family, and all clients whom Defendant served as a registered representative prior to his employment from Merrill Lynch:

(b) using, disclosing to his present employer or any other competitor, or transmitting information contained in the records of Merrill Lynch, including the names, addresses, and financial information of clients, except those records of Defendant's clients excluded from the coverage of this order in (a), and that all original records or copies thereof and/or reproductions and/or computerized recordings thereof, in whatever form, be immediately returned to Plaintiff [again excepting the records of those clients excluded in (a)].

The parties are hereby granted leave to commence discovery immediately.

This preliminary injunction shall have a duration of 30 days, but may be renewed upon motion pending the inception of arbitration in accordance with the Constitution and Rules of the New York Stock exchange, and without waiver of the parties' rights thereunder. The parties shall immediately advise the Court .nce the arbitration panel undertakes jurisdiction of this matter.

DONE AND ORDERED in chambers at the United States District

---

him by Prudential.



Court, West Palm Beach, Florida, this 13th day of April, 1993.

KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

copies provided:

MARCOS D. JIMENEZ
GREGORY RUBIN
HUMBERTO PENA

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   92-8642-CIV-NESBITT

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

        Plaintiff,

vs.

THOMAS HAGERTY,

        Defendant.

ORDER GRANTING
PRELIMINARY INJUNCTION

FILED by_____ D.C.

OCT 2 7 1992

CLERK U.S. DIST. CT.
S.D. OF FLA.—MIAMI

This cause comes to the Court upon the Plaintiff's Motion for a Preliminary Injunction filed October 5, 1992.  The Court held a hearing on October 16, 1992 where both parties came and were heard.  After careful consideration, it is ORDERED and ADJUDGED as follows:[1]

---

[1] On October 6, 1992, the Court issued a Temporary Restraining Order and scheduled an October 16th hearing on the Plaintiff's Motion for a Preliminary Injunction.  The Court also directed the Defendant to file his opposing memorandum by October 15th.  On October 16th, the Defendant filed an untimely thirty-five page memorandum in violation of Rule 10(C) of the Rules of the United States District Court for the Southern District of Florida ("Local Rule(s)").  The Court struck Defendant's memorandum, but provided the Defendant an opportunity to file an amended memorandum before the hearing.  Defendant subsequently filed a memorandum which complied with the Local Rules.  At the October 16th hearing, the Court denied Defendant's motion to resubmit its original memorandum.

Subsequently, the Defendant sent an ex parte letter to the Court seeking to substitute a revised memorandum because the memorandum submitted prior to the hearing "contain[ed] many errors and omitted important arguments."  This letter and the attached memorandum violate Local Rule 10(M) and Rule 4-3.5(b)(2) of the Rules Regulating The Florida Bar.  For these reasons, and because the memorandum admittedly contained arguments the Plaintiff had no opportunity to address, the memorandum is stricken and will not be considered.

1

In this diversity action Plaintiff alleges that Defendant breached an Account Executive Training Agreement ("Account Agreement") between the parties. This agreement provides in part that:

1. All records of Merrill Lynch, including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch, and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form, and that the names, addresses, and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business for Merrill Lynch.

2. In the event of termination of my services with Merrill Lynch for any reason, I will (i) not solicit, for a period of one year from the date of termination of my employment, any of the clients or prospective clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch in any office of Merrill Lynch in which I was employed, and who reside within the same state as the Merrill Lynch office or offices in which I was employed, and (ii) return any original records and purge or destroy any computerized, duplicated or copied records referred to in paragraph (1) which have been removed from the premises of Merrill Lynch in any form.

Defendant also agreed to abide by Plaintiff's "Compliance Outline" which provides that

Client's accounts shall be handled in a highly confidential manner. You should not discuss the affairs of any client with anyone else.

\*                 \*                 \*

No information or records concerning the affairs of Merrill Lynch and/or its clients may be released except to persons legally entitled to receive such. This includes confidential information requested during routine regulatory visits.

On September 1, 1992, the Plaintiff terminated the Defendant.

Defendant subsequently commenced employment with Raymond James &

2

Associates ("Raymond James")—a competitor of Plaintiff. Plaintiff alleges that the Defendant has been using customer lists Defendant acquired while employed by Plaintiff to solicit Plaintiff's customers over to Raymond James. Plaintiff requests that the Court enjoin Defendant's conduct because it violates his Account Agreement.

In order to secure injunctive relief the Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm; (3) greater harm to the plaintiff than to the Defendant; and (4) promotion of the public interest. All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989). No one element is controlling; instead, the Court must balance each factor in light of the circumstances. Florida Medical Ass'n Inc. v. U.S. Dept. of Health, Ed. and Welfare, 601 F.2d 199 (5th Cir. 1979).

The Court finds that the Plaintiff has established a substantial likelihood of success on the merits. The Account Agreement requires Defendant to return all original Merrill Lynch records and purge all copies of those records in his possession when he ceases working for Plaintiff. The agreement also prohibits the Defendant from soliciting any clients he serviced while working for Plaintiff.

Despite the Account Agreement's clear language, the Defendant retained a home database containing the names and financial information of Plaintiff's clients after he left Plaintiff's employ. Defendant subsequently provided this information to



Raymond James.    Defendant and Raymond James then solicited virtually all of the approximately three hundred clients Defendant had serviced while employed by Plaintiff.    A number of these clients have already transferred their Merrill Lynch accounts to, or opened new accounts with, Raymond James and conducted transactions through Raymond James.   These actions unquestionably violate the Account Agreement.

Defendant, relying on Hapney v. Central Garage, Inc., 579 So.2d 127 (Fla. 2nd. Dist. Ct. App. 1991), argues that the Account Agreement is unenforceable because it does not protect a "legitimate business interest."[2]  In Hapney, the court held that under § 542.12 Fla. Stat., now § 542.33, an enforceable non-competition agreement "must relate to a legitimate business interest of the employer in order to restrict or impinge upon the right to pursue and earn a living guaranteed by our constitution." Id. 131.  The Court then listed three categories of recognized interests: (1) trade secrets and confidential business lists; (2) customer goodwill; and (3) extraordinary or specialized training provided by the employer.  Applying these criteria, the Court finds that the Account Agreement protects a legitimate business interest held by the Plaintiff.

Defendant argues that Plaintiff has no legitimate business interest in the customer lists because the Defendant compiled the

_____

[2] Defendant does not contend that the Agreement is invalid on its face, see e.g. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham, 658 F.2d 1098 (5th Cir. 1981), and thus the Court need not address that issue.

entire client list on his own time and at his own expense.  The
facts, however, belie Defendant's position.  Although the Defendant
testified that he researched potential clients himself, he also
testified that he used Plaintiff's facilities to solicit and
service those customers.  Specifically, Defendant used Plaintiff's
phones, postage, promotional literature, name and reputation when
communicating with prospective and current clients; and used
Plaintiff's full service facilities to open client accounts,
effectuate transactions, and service clients generally.  Indeed,
Defendant testified that he solicited 80% of his clients at
Plaintiff's office and that Plaintiff's reputation was an important
part of his sales pitch.  Most important, Defendant conceded that
he could not have carried on this business without the Plaintiff
because he did not have the necessary resources to solicit and
service these accounts.  The Court finds that Plaintiff has a
legitimate business interest in the customer list based on its
substantial, indeed essential, contribution to the list's
development.

Regardless of who compiled the customer list, however, it is
clearly protected under Hapney.  The Hapney court's ultimate
holding was that "trade secrets, customer lists, and the right to
prevent direct solicitation of existing customers are, per se,
legitimate business interests subject to protection; [and] other
business interests, such as, extraordinary training or education,
may constitute predictable interests depending on the proof
adduced."  Id. at 134 (emphasis added).  Florida Statute § 812.081

defines trade secret as

> any . . . list of customers . . . which is secret; of
> value; for use or in use by the business; and of
> advantage to the business, or providing an opportunity to
> obtain and advantage over those who do not know how to
> use it, when the owner takes measures to prevent it from
> becoming available to persons other than those selected
> by the owner to have access thereto for a
> limited purpose."regardless of who compiled the . First,
> the list.

§ 812.081 Fla. Stat. (emphasis added).

The Defendant conceded on cross-examination that the customer list
is comprised of Plaintiff's customers.  Considering the measures
Plaintiff took to ensure the list's confidentiality, see Affidavit
of Aleks Acimovic, the Court finds that the list is a trade secret
as defined in § 812.081.  Accordingly, Plaintiff has a legitimate
business interest in the list because it is a trade secret.

Plaintiff, however, would have a legitimate business interest
in the customer list even if it were not a trade secret. The Hapney
court explicitly held that "customer lists, and the right to
prevent direct solicitation of existing customers are, per se,
legitimate business interest." Hapney, at 134.  There is no doubt
that the subject of this dispute is a customer list and that the
list contains Plaintiff's existing customers.  Moreover, Plaintiff
is clearly attempting to "prevent direct solicitation of existing
customers."   Thus, under Hapney the Plaintiff has a per se
legitimate, indeed substantial, business interest in the customer
list.

Having determined that the Plaintiff has a legitimate business
interest in the list, the Court must find that the Account

6

Agreement is valid.  The Court also finds that the Defendant has
admittedly violated the agreement and that, therefore, the
Plaintiff is likely to succeed on the merits.  The Court must next
determine whether the Plaintiff will suffer irreparable harm if the
motion is not granted.

Section 542.33 of the Florida Statutes provides that the "use
of specific trade secrets, customer lists or direct solicitation of
existing customers shall be presumed to be irreparable injury and
may be specifically enjoined."  The Court has already determined
that Defendant's conduct implicates all three of these criteria.
Accordingly, the burden shifts to the Defendant to  overcome the
presumption that his conduct will irreparably harmed the Plaintiff.

Defendant's primary argument against irreparable harm is that
Plaintiff's damages are ascertainable and thus subject to a final
monetary judgement.   In support of this proposition the Defendant
cites Merrill Lynch, Pierce, Fenner & Smith v. de Liniere, 572 F.2d
246 (N.D. Georgia 1983) and Merrill Lynch, Pierce, Fenner & Smith
Inc. v. E.F. Hutton & Co., Inc., 403 F.Supp. 336 (E.D. Mich. 1975).
The Court finds these cases unpersuasive for basically two reasons.
First, the Court notes that neither case involved a statutory
presumption of irreparable harm.  Indeed, the Court in E.F. Hutton
based its finding on the Plaintiff's failure to meet its burden of
proof. E.F. Hutton at 343-44.  Second, the Court simply disagrees
that Plaintiff's damages can be determined with "a sufficient
degree of certainty." Id. at 343.

7

Florida courts have repeatedly held that injunctive relief is appropriate where customer lists are involved.  In <u>Carnahan v. Alexander Proudfoot Co,</u> 581 So.2d 184 (Fla. 4th Dist. Ct. App. 1991), the court found that even if irreparable injury <u>was not presumed</u>, copying computer disks and soliciting clients would cause irreparable harm.  Under the current facts and statute, however, irreparable injury actually is presumed.  Moreover, the Florida Supreme Court has held repeatedly that where a Defendant has breached a covenant not to compete "[t]he Court may award damages . . . but the normal remedy is to grant an injunction.  This is so because of the inherently difficult task of determining just what damage is actually caused by the employee's breach of the agreement." <u>Miller Mechanical, Inc. v. Ruth</u>, 300 So.2d 11 (Fla. 1974).  In <u>Capraro v. Lanier Business Products, Inc.</u>, 466 So.2d 212 (Fla. 1985), the Florida Supreme Court reiterated that an injunction, not monetary damages, was the proper remedy for a breach of a non-competition agreement.  Addressing irreparable injury the Court also held that

> [t]o require that a plaintiff prove irreparable injury . . . would, in most instances, defeat the purpose of the plaintiff's action. Immediate injunctive relief is the essence of such suits and often times the only effectual relief. It truly can be said in this type of litigation that relief delayed is relief denied.

<u>Id.</u> at 213.

Florida law, therefore, recognizes that monetary damages are generally an inadequate remedy where an employee breaches a non-competition agreement.  Defendant's position does not undermine Florida's statutory and precedent presumption of irreparable harm.

8

Defendant's position incorrectly presumes that Raymond James' commissions are a reliable measure of Merrill Lynch's damages. Defendant's expert conceded, however, that when a broker solicits clients away from a former employer the clients sometimes choose not to do business with either party. Moreover, the Defendant testified that Merrill Lynch's reputation, services and products were essential element's of his business success. While the evidence also indicated that Merrill Lynch's reputation, services and products were among the best in the industry, there was no comparable evidence of Raymond James' reputation, services or products. Regardless, these qualities will undoubtably differ in some respects, and these differences undoubtably will impact Defendant's future success. Moreover, some clients undoubtably will be lost entirely. Consequently, the Court finds that Defendant has not establish that Raymond James' commissions are a reliable measure of Merrill Lynch's damages.

Even if Raymond James' commissions were an appropriate measure of damages, there is no way to adequately determine that amount with a "sufficient degree of certainty." Defendant initially maintained that Plaintiff's damages would be limited to one year, and conceded that "[c]alculating damages . . . for a ten year period [would be] a much more onerous task." See Defendant's Response Memorandum in Opposition to Preliminary Injunction at 3 n.2. This position presumes that Plaintiff is not entitled to damages for business Defendant solicits after one year because fendant would be able to recapture these clients after the non-

9

competition clause expired.  Defendant, however, testified that he would be unable to solicit these clients in a year if he complied with the terms of the agreement.  Because Defendant would be unable to successfully lure Plaintiff's current clients away if he complies with the agreement, the damages for breaching the agreement must extend for the entire period Defendant services those clients.

Apparently realizing this, Defendant attempted to show at the hearing that damages over an extended period easily could be calculated.  First, Defendant's expert testified that there is approximately a 20% annual client turnover in the industry. Second, the expert testified that he could calculate damages over an extended period of time because every transaction is recorded. On cross-examination, however, the witness conceded that some clients will remain with a firm for decades.  He also conceded that he could not reliably calculate Plaintiff's damages until the account was closed.  This opinion is supported by testimony from Plaintiff's witness, Alex Acimovic, who testified that an account's current business activity is not necessarily representative of its future activity.  Therefore, according to Defendant's own witness, approximately 20% of Plaintiff's damages could not be determined for five years and damages for certain accounts might not be ascertainable for decades.

In addition to lost profits from its present accounts, Plaintiff also alleges that it will lose business its current clients would refer to it in the future.  In response, Defendant

10

again argues that these damages can be determined because every account's source and activity is recorded. The derivative nature of these damages only compounds the difficulties in calculating damages previously discussed. For instance, would Merrill Lynch be entitled to all the profits from new accounts or only the portion equal to its contribution in developing that account? More important, the Defendant is solely responsible for identifying referred accounts. Thus, there is no objectively reliable mechanism for determining which of Defendant's future accounts are derived from Plaintiff's current accounts. The effectiveness of Plaintiff's remedy should not depend on whether the Defendant truthfully and accurately discloses the source of his future accounts.

For these reasons, the Court finds that Defendant has not overcome the statutory presumption of irreparable injury. Indeed, under these facts no presumption is necessary to find irreparable harm.[3]

The Court must next evaluate the balance of harms between the parties. At risk in this suit are 551 accounts, representing approximately $56.4 million of assets and over $653,000 in gross commissions, as well as any future accounts current clients will refer to Plaintiff. As the Court has already explained, these

---

[3] Although the Court finds that Plaintiff has clearly establish irreparable harm, it further notes that monetary damages can not compensate Plaintiff for Defendant's unilateral breach of client confidentiality. Nor can monetary damages compensate Plaintiff for the example Defendant's actions set for other Merrill Lynch employees--which will inevitably result in future litigation expenses.

accounts represent a return on a significant investment by Plaintiff. Moreover, the Court has already determined that the injury to Plaintiff will be irreparable. On the other hand, Defendant testified that it will take him seven years to develop a comparable client list. The harm to the Defendant, however, is mitigated by his ability to solicit new clients as well as his present clients' ability to contact him. In addition, the Defendant testified that he will receive twice the commission for new accounts at Raymond James. Finally, the Defendant expressly agreed to be enjoined if he violated the Account Agreement. The Court finds, therefore, that the balance of harms weighs in favor of the Plaintiff.

Finally, the Court finds that an injunction will further the public interest. The injunction only prohibits the Defendant from soliciting clients; it does not preclude the public from contacting the Defendant. Furthermore, Florida's public policy clearly favors protecting Plaintiff's interests. See, e.g., Fla. Stat. §§ 542.33, 608.001, 812.081.

In sum, the Court finds that the Plaintiff has demonstrated a substantial likelihood of success on the merits, as well as, certain and irreparable harm. Balancing these factors with the relative harm to the parties and the public interest it is ORDERED and ADJUDGED that the Plaintiff's Motion for a Preliminary Injunction is GRANTED. The Preliminary injunction shall incorporate the terms of the Temporary Restraining Order issued October 6, 1992. The Preliminary Injunction shall remain in effect

pending further Order of this Court or until a decision in arbitration conducted before a duly appointed panel of arbitrators convened in accordance with the Constitution and Rules of the New York Stock Exchange, and hearings otherwise held in accordance with the Constitution and Rules of the New York Stock Exchange.[4]

It is further ORDERED and ADJUDGED that all further proceedings are hereby stayed other than to enforce the terms of the Preliminary Injunction.

DONE and ORDERED, in chambers, Miami, Florida, this 27th day of _October_____, 1992.

LENORE C. NESBITT
UNITED STATES DISTRICT JUDGE

cc: counsel of record

---

[4] The Defendant's Motion to Compel [expedited] Arbitration and Stay Action is DENIED for the reasons stated in Plaintiff's opposing memorandum.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,
A Delaware Corporation,
1061 East Indiantown Road
Jupiter, Florida  33477,

        Plaintiff

   v.

Thomas W. Hegarty
186 Hampton Circle
Jupiter, Florida  33458

        Defendant

FILED by _____ D.C.

CLERK U.S. DIST. CT.
S.D. OF FLA.

CIVIL ACTION

NO. 92- 8642-Cv-Nesbitt

**ORDER**

AND NOW, this 7th day of October, 1992, upon consideration of the Complaint and Motion of Plaintiff and having determined that:

    1.  Plaintiff will suffer irreparable harm and loss if Defendant is permitted to (a) convert the property of Merrill Lynch to Defendant's own personal use and benefit, and that of Defendant's new employer, Raymond James & Associates, and (b) solicit Merrill Lynch accounts, clients and customers;

    2.  Plaintiff has no adequate remedy at law; and

    3.  Greater injury will be inflicted upon Plaintiff by the denial of temporary injunctive relief than would be inflicted upon Defendant by the granting of such relief, and an injunction serves the public interest in the protection of confidential and trade secret business and client property and enforcement of employee agreements, firm policy and fiduciary duty;

IT IS HEREBY ORDERED AND DECREED THAT:

1.   A Temporary Restraining Order issue immediately and that Plaintiff post security in support thereof in the amount of $100,000.00 by no later than the ___ day of October, 1992;

2.   Defendant is enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any agent, representative or employee of Defendant's current employer, Raymond James & Associates, until hearing and thereafter until further Order of this Court from:

a)   soliciting any business from any client of Merrill Lynch who resides in the state of Florida whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch, and from accepting any business or account transfers from any of said customers whom Defendant has solicited in the past for the purpose of doing business with Defendant's present employer including, without limitation, the individuals and entities referenced in Exhibit "C" to Plaintiff's Complaint (excluding Defendant's immediate family);

b)   using, disclosing, or transmitting information contained in the records of Merrill Lynch, including the names, addresses, and financial information of clients referenced in Exhibit "C"; and that original records and all copies and/or reproductions and/or computerized recordings thereof,

2

in whatever form, be immediately returned to Plaintiff;

4.   Plaintiff is granted leave to commence discovery immediately upon reasonable notice;

5.   This Order shall remain in full force and effect for a period of 10 days, unless extended or this Court specifically orders otherwise in accordance with Fed.R.Civ.P. 65;

6.   Defendant shall show cause before this Court on the __16th__ day of __October__ 1992 at __3:00__ o'clock __P__.m., or as soon thereafter as counsel may be heard, why a Preliminary Injunction should not be ordered according to the terms and conditions set forth above.

BY THE COURT:

_____
                                    U.S.D.J.

3



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 92-8643-CIV-MORENO

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INC., a Delaware
Corporation

     Plaintiff,

vs.

GARY S. KLEID,

     Defendant.
_____/

FILED by_____ D.C.

OCT 3 0 1992

T. C. CHELEOTIS
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE came before the Court upon Motion of Plaintiff
Merrill Lynch, Pierce, Fenner & Smith, Inc. for Temporary
Restraining Order and Preliminary Injunction filed on October 5,
1992. On October 14; 1992, after a hearing where both sides were
represented, the court granted Plaintiff's Motion for Temporary
Restraining Order in accordance with Rule 65(b) of the Federal
Rules of Civil Procedure. The court extended the duration of the
temporary restraining order to November 3, 1992. Subsequently,
the court held an evidentiary hearing on Merrill Lynch's Motion
for Preliminary Injunction.

THE COURT has considered the Motion, responses, and the
pertinent portions of the record. Based on the following,
Plaintiff's motion is GRANTED.



### Facts

Merrill, Lynch, Pierce, Fenner & Smith brought this action on October 5, 1992 in federal court under jurisdiction pursuant to 28 U.S.C. § 1332.  Merrill Lynch is seeking injunctive relief against Defendant Gary S. Kleid and damages for breach of contract; conversion of trade secrets, customer lists, and confidential business information; breach of fiduciary duty; and unfair competition.

Kleid commenced employment with Merrill Lynch as a financial consultant in January of 1989.  On January 16, 1989, Kleid signed a Merrill Lynch Financial Consultant Trainee Agreement which included the following non-compete clause:

> In the event of termination of my services
> with Merrill Lynch for any reason, I will
> (i) not solicit, for a period of one year from
> the date of termination of my employment, any
> of the clients of Merrill Lynch whom I served
> or other clients of Merrill Lynch whose names
> became known to me while in the employ of
> Merrill Lynch in the office of Merrill Lynch
> in which I was employed, and who reside within
> fifty miles of the Merrill Lynch office in which
> I was employed.

Merrill Lynch terminated Kleid's employment on September 15, 1992.  Subsequently, Prudential Securities, Inc. hired Kleid as a financial consultant.

Merrill Lynch alleges that Kleid has engaged in the following acts in violation of the non-compete clause in the Agreement:

> (1) removing and/or copying original Merrill
> Lynch records and documents, confidential
> information, and customer lists, including names
> and addresses of each account;

2

(2) disclosing and producing said records and information to a Merrill Lynch competitor, Prudential; and

(3) soliciting Merrill Lynch customers to transfer their accounts and business to Prudential.

Kleid testified that he telephoned clients obtained while in the employ of Merrill Lynch after he was terminated by Merrill Lynch and hired by Prudential Securities, Inc.

## Standard for Preliminary Injunction

Under the analysis set out by the Eleventh Circuit, the court must examine the following four factors: (1) whether there is a substantial likelihood that the movant will prevail on the underlying merits of the case; (2) whether there is a substantial threat that the moving party will suffer irreparable damage if relief is denied; (3) whether the threatened injury to the movant outweighs the harm the injunction may cause defendant; and (4) the extent to which granting the preliminary injunction will disserve the public interest.  Tally-Ho, Inc. v. Coast Community College Dist., 889 F.2d 1018, 1022 (11th Cir. 1989).  The court must balance each factor in light of the circumstances.  Florida Medical Ass'n, Inc. v. United States Dept. of Health, Educ., and Welfare, 601 F.2d 199 (5th Cir. 1979).

## Analysis

1.   Substantial Likelihood of Success

The court finds that Merrill Lynch has established a substantial likelihood of success on the merits.  Under Florida

3



law, an employee may contract with an employer "to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area." Fla. Stat. ch. 542.33.

The existence of a legitimate interest of Merrill Lynch is a threshold condition to the validity of its covenant not to compete. <u>Hapney v. Central Garage, Inc.</u>, 579 So.2d 127 (Fla. Dist. Ct. App. 1991). Defendant Kleid asserts that the customer list in question is the result of his own time, effort, and expense and that therefore Merrill Lynch has no legitimate interest in the list of customer names. The Florida Second District Court of Appeal, however, has held that such customer lists are <u>per se</u> legitimate interests of employers. <u>Id.</u> at 134.

Additionally, non-competition agreements must contain reasonable time and area restrictions to be enforceable. The court finds that the one-year and 50-mile radius restrictions found in the Agreement between Merrill Lynch and Kleid are reasonable. The Agreement does not preclude Kleid from working at Prudential Securities, Inc. and only applies to any Merrill Lynch clients serviced by Kleid or other clients of Merrill Lynch whose names became known to Kleid while employed at Merrill Lynch.

Although Kleid testified that he read and signed the Agreement, he argues that the restriction is unenforceable. According to Kleid, Merrill Lynch Vice President Lionel Greenbaum told him that the restriction was unenforceable and that Merrill

4

Lynch has never and would never enforce it.  Greenbaum, however, testified that he _never_ told Kleid or any other employee of Merrill Lynch that the non-compete restriction was unenforceable or that it would not be enforced.  On this issue, the court makes a credibility finding in favor of Greenbaum and against Kleid.

Accordingly, the court finds that there is a substantial likelihood that Merrill Lynch would succeed in a trial on the merits.

2.   **Irreparable Harm**

Fla. Stat. ch. 542.33(2)(a) provides that "use of specific trade secrets, customer lists, or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined."  This presumption, however, is rebuttable.  See Hapney v. Central Garage, Inc., 579 So.2d 127 (Fla. Dist. Ct. App. 1991).

There exists a rebuttable presumption in this case that Merrill Lynch suffered irreparable harm by Kleid's solicitation of Merrill Lynch customers.  Merrill Lynch required Kleid to sign an agreement containing a specific non-compete clause covered by Fla. Stat. ch. 542.33(2)(a).  In addition, Kleid used Merrill Lynch customer lists and directly solicited existing Merrill Lynch customers.

Kleid has failed to rebut the statutory presumption of irreparable harm.  Instead, Kleid has relied primarily on this court's finding in the case Merrill, Lynch, Pierce, Fenner &

5



<u>Smith, Inc. v. Newton and Hazlett</u>, Case No. 92-1961-CIV-MORENO, in which Merrill Lynch was also seeking a preliminary injunction to preclude two former financial consultants from soliciting Merrill Lynch clients. In <u>Newton and Hazlett</u>, the court denied the Motion for Preliminary Injunction because of a finding that Merrill Lynch had an adequate remedy at law. The most important factual distinction between the case currently before the court and the <u>Newton and Hazlett</u> decision is the existence of an employment contract signed by Kleid containing a specific non-compete restriction. Although Kleid argues that this is an insignificant distinction, the court finds this difference highly significant because the existence of a reasonable non-compete agreement in this case triggers the rebuttable presumption of irreparable harm. Fla. Stat. ch. 542.33.

3.    <u>Balancing of the Harms</u>

The court must determine whether the threatened injury to Merrill Lynch outweighs the harm that the injunction may cause Kleid. According to Kleid's testimony, Merrill Lynch accounts of his clients totalled between six and seven million dollars and generated yearly commissions between 150 and 200 thousand dollars. In his affidavit of October 14, 1992, Kleid testified that Merrill Lynch has over 12,000 account executives and over 450 billion dollars in customer assets under management.

Kleid also testified that an injunction would critically impair his ability to earn a living because his Merrill Lynch

clients would constitute a substantial part of his income.  The restriction in the Agreement, however, does not prohibit Kleid from soliciting new clients and only precludes him from soliciting Merrill Lynch clients who reside within 50 miles from the Merrill Lynch office in which Kleid was employed. Furthermore, Kleid testified that he has never violated the contract nor does he intend to violate it.  Therefore, any harm which Kleid might suffer by the court's granting of a preliminary injunction is minimal.

The court finds that this third factor favors Merrill Lynch despite the fact that the amount of customer assets involved is not significant.  Merrill Lynch nonetheless would be harmed, and Kleid, a self-described good salesman, is able to obtain new clients.

4.  **Public Interest**

An injunction in this instance will further the public interest because Florida public policy favors enforcement of reasonable covenants not to compete.  See Fla. Stat. ch. 542.33. Furthermore, this contract does not eliminate Kleid's ability to work and to earn a living but only prohibits him from soliciting a specified group of Merrill Lynch customers.



## CONCLUSION

In sum, the court finds that Merrill Lynch has demonstrated a substantial likelihood of success on the merits and that Kleid has failed to rebut the statutory presumption of irreparable harm.  Balancing these factors with the factors of relative harm and public interest, it is

ADJUDGED that Merrill Lynch's Motion for Preliminary Injunction against Defendant Kleid is GRANTED.  The preliminary injunction shall incorporate the terms of the court's October 14, 1992 Order Granting Plaintiff's Motion for Temporary Restraining Order.  The preliminary injunction shall remain in effect pending further Order of the court or until a decision is reached through arbitration conducted in accordance with the court's Order Compelling Expedited Arbitration of October 15, 1992.  All further proceedings are stayed except for those necessary to enforce this Order.

DONE AND ORDERED in Chambers at Miami, Florida, this 30ᵗʰ day of October, 1992.

UNITED STATES DISTRICT JUDGE
FEDERICO A. MORENO

copies provided:
U.S. Magistrate Judge Linnea R. Johnson
Ronald B. Ravikoff, Esq.
Thomas L. Loder, Esq.
Gregory S. Rubin, Esq.
Curtis Carlson, Esq.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED by _____ D.O.

OCT 1 4 1992

T. C. CHELEOTIS
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

MERRILL LYNCH, PIERCE, FENNER       :
& SMITH, INC.,                      :
A Delaware Corporation,             :
3300 PGA Boulevard                  :
Palm Beach Gardens 33410            :
                                    :        CIVIL ACTION
            Plaintiff               :
                                    :     NO. 92-8643-CIV-MORENO
    v.                              :
                                    :
                                    :
Gary S. Kleid                       :
428 Plaza Real                      :
Boca Raton, Florida 33432           :
                                    :
            Defendant               :

**ORDER**

AND NOW, this ___14__ day of October, 1992, upon

consideration of the Complaint and Motion of Plaintiff and having

determined that:

1.    Plaintiff will suffer irreparable harm and loss if

Defendant is permitted to (a) convert the property of Merrill

Lynch to Defendant's own personal use and benefit, and that of

Defendant's new employer, Prudential Securities, Inc., and (b)

solicit Merrill Lynch accounts, clients and customers;

2.    Plaintiff has no adequate remedy at law; and

3.    Greater injury will be inflicted upon Plaintiff by

the denial of temporary injunctive relief than would be inflicted

upon Defendants by the granting of such relief, and an injunction

serves the public interest in the enforcement of reasonable

contracts and protection of confidential business and client
property;

IT IS HEREBY ORDERED AND DECREED THAT:

1.   A Temporary Restraining Order issue immediately
and that Plaintiff post security in support thereof in the amount
of $100,000.00 by no later than the 15 day of October, 1992;

2.   Defendant is enjoined and restrained, directly or
indirectly, and whether alone or in concert with others,
including any agent, representative or employee of Defendant's
current employer, Prudential Securities, Inc., until hearing and
thereafter until further Order of this Court from:

a)   soliciting any business from any client
of Merrill Lynch who resides within fifty miles of the
Merrill Lynch office in which Defendant was employed,
whom Defendant served or whose name became known to
Defendant while in the employ of Merrill Lynch, and
from accepting any business or account transfers from
any of said customers whom Defendant has solicited in
the past for the purpose of doing business with
Defendant's present employer including, without
limitation, the individuals and entities referenced in
Exhibit "D" to Plaintiff's Verified Complaint
(excluding Defendant's immediate family);

b)   using, disclosing, or transmitting
information contained in the records of Merrill Lynch,
including the names, addresses, and financial

2



information of clients referenced in Exhibit "D"; and
that original records and all copies and/or
reproductions and/or computerized recordings thereof,
in whatever form, be immediately returned to Plaintiff;

4.   Plaintiff is granted leave to commence discovery
immediately upon reasonable notice;.

5.   This Order shall remain in full force and effect
for a period not to exceed 10 days, and shall otherwise be
governed by Fed.R.Civ.P 65.

BY THE COURT:

_October 14, 1992_
_at 5:00 p.m._
_in Open Court_

_____
U.S.D.J.

3



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

                    Plaintiff,

vs.                          Case No. 92-386-Civ-ORL-20

SCOTT D. MARTIN,

                    Defendant.

_____

## O R D E R

The Plaintiff filed on May 7, 1992, a Motion for Temporary Restraining Order (hereinafter "TRO") and Preliminary Injunction. The Plaintiff then filed on May 8, 1992, an Amended Motion for Temporary Restraining Order and served the Defendant notice of these motions. The Court granted an ex parte TRO on May 8, 1992, which enjoined the Defendant from soliciting any business from any of Merrill Lynch's clients that reside within 100 miles of the Orlando office, from accepting any business from any of those customers whom the Defendant has solicited in the past (excluding his immediate family), and from using, disclosing, or transmitting information contained in those records to third parties.  The Court

conducted a hearing on the Motion for Preliminary Injunction on May 13, 1992.

## FACTUAL BACKGROUND

The Plaintiff is a brokerage firm. The Plaintiff, through its brokers, sells various types of financial securities to the public. Client records, account information, and business reputation are essential ingredients to being successful. These records and account information are, therefore, a key ingredient in making future sales and earning profits.

The Defendant, Mr. Scott D. Martin, was employed as a financial consultant. As a financial consultant, the Defendant's job was to work with the Plaintiff's clients and help them develop financial strategies to achieve personal investment goals. He serviced, according to the Plaintiff, over 350 accounts worth $15.6 million dollars in assets, and annual sales commissions in excess of $190,000.

While the Defendant was employed at Merrill Lynch, the Plaintiff would provide the Defendant consultant with various resources. The Defendant was sent to an intensive training class at Merrill Lynch's national training facility and other training at the Orlando office. The Plaintiff registered the Defendant with various securities dealers, the American Stock Exchange, and other state securities commissions. The Plaintiff also provided him with

2

the benefit of all of Plaintiff's systems, benefits and support throughout his employment. All of these benefits were given to the Defendant, at least in part, to enable him to better serve the Plaintiff's clients and develop sound financial strategies.

In return for all these benefits, the Plaintiff and the Defendant agreed to a covenant. The covenant was part of a Trainee Agreement which the Defendant signed on August 12, 1987, as a condition of his employment at Merrill Lynch. The Agreement provides in pertinent part that:

> [I]n the event of termination of [the Defendant's] services with Merrill Lynch for any reason, [the defendant] will (i) not solicit for a period of one year from the date of termination of [his] employment, any of the clients of Merrill Lynch whom [he] served or other clients of Merrill Lynch whose names became known to [him] while in the employ of Merrill Lynch in the office of Merrill Lynch in which [he] was employed, and who reside within one hundred miles of the Merrill Lynch office in which [he] was employed, and (ii) return any original records and purge or destroy any computerized, duplicated, or copied records referred to in paragraph 1 which have been removed from the premises of Merrill Lynch in any term....

Plaintiff's Exhibit A, paragraph 2. The Agreement also provides that the Defendant consents to the issuance of a TRO or a Preliminary or Permanent Injunction to maintain the status quo pending the outcome of any arbitration proceeding.

After working at Merrill Lynch for several years, the Defendant left Merrill Lynch on May 5, 1992, and he resigned without notice. On the day he resigned, Mr. Donald S. Heaney conducted an exit interview, reminded him of the terms of the Agreement, and presented him with a copy of the Trainee Agreement,

3

telling him that soliciting these clients would violate the
agreement. After it was brought to his attention by the Plaintiff's
sales representatives that the Plaintiff's customers were contacted
by the Defendant, and that he solicited the transfer of their
accounts to PaineWebber, the Plaintiff filed this suit.

The Plaintiff filed a Complaint alleging that the Defendant
breached this Trainee Agreement and sought injunctive relief as
well.  The Plaintiff alleges the following causes of action: (1)
conversion of trade secrets, customer lists, and confidential
business information, (2) breach of contract, (3) breach of
fiduciary duty, and (4) unfair competition.

### JURISDICTION

The first issue the Court must address is jurisdiction.
The Defendant argues that this Court is without jurisdiction to
grant an injunction.  Accordingly, the Defendant argues that the
Court should deny the injunction and stay any further proceedings
until the New York Stock Exchange can arbitrate this dispute. The
Defendant contends that 9 U.S.C. § 3, which is commonly known as
the Federal Arbitration Act, requires a stay of all proceedings
until arbitration is completed.

The several Circuits that have considered the jurisdiction
of a District Court to grant injunctive relief under the same
factual setting have concluded that the Court does have
jurisdiction. See, e.g., Teradyne Inc. v. Mostek Corp., 797 F.2d
43 (1st Cir. 1986); Blumenthal v. Merrill Lynch, Pierce Fenner &

4

Smith, Inc., 910 F.2d 1049 (2d Cir. 1990); Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806 (3d Cir. 1989); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048 (4th Cir. 1985).

Although the Defendant relies on Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey, 726 F.2d 1286, 1291 (8th Cir. 1984), that decision alone does not hold that the District Court is without jurisdiction, and it can be reconciled with the other Circuits. The Hovey court qualified its holding to contracts which do not contain any qualifying language. Id. at n.10. If, on the other hand, the parties contractually agree that disputes shall be immediately enjoined and the status quo maintained until the case is referred to arbitration, the District Court can properly exercise its jurisdiction since the Defendant has consented to maintain the status quo pending arbitration.

### PRELIMINARY INJUNCTION

A Preliminary Injunction may be entered where four essential elements are satisfied: (1) the Plaintiff demonstrates a substantial likelihood that it will prevail on the merits, (2) there exists a substantial threat that the Plaintiff will suffer irreparable injury, (3) the threatened injury to the Plaintiff must outweigh the harm the injunction would cause to the Defendant, and (4) the injunction must serve the public interest. Harris Corp. v. Nat'l Iranian Radio & Television, 691 F.2d 1341, 1355 (11th Cir. 1982).

5

### 1. LIKELIHOOD OF SUCCESS

Although some Courts do not enforce covenants that restrict trade, this Court sitting in diversity must look to the law of Florida which does enforce these agreements. *See* Fla. Stat. Ann. § 542.33 (West 1980 & 1992 Supp.). There are some limitations, however. The employer, for example, may not use the agreement simply to eliminate competition. Instead, the employer must establish a legitimate business interest as a threshold condition to the validity of a covenant not to compete. *Hapney v. Central Garage, Inc.*, 579 So.2d 127, 131 (Fla.2Dist.Ct.App. 1991).

The law has recognized three specific interests that are legitimate business interests: (1) trade secrets and confidential business lists, records, and information, (2) customer goodwill, and (3) to a limited degree, extraordinary or specialized training provided by the employer. *Id.* The Trainee Agreement alleged to be breached includes this statutorily protected interest—trade secrets and confidential business lists, records, and information. Thus, the Plaintiff has a legitimate business interest, and the Agreement is narrowly drawn. Therefore it is a reasonable covenant and it is enforceable.

There is a substantial likelihood that the Plaintiff will prevail on the merits since the Trainee Agreement is enforceable at law and the Defendant breached the non-solicitation covenant by soliciting clients within 100 miles of the Orlando office. The Plaintiff submitted an affidavit by Mr. Donald S. Heaney, the

6

Senior Resident Vice President of Merrill Lynch and Manager of the Orlando office, stated that at the time of the Defendant's resignation, the Plaintiff called Martin's new manager at PaineWebber, Mr. Alan Pope, who admitted to him that Martin and PaineWebber intended to send a "mailing" to over 350 of the Plaintiff's clients. In addition, it was reported by at least ten different customers that the Defendant called them on the phone or met with them in person to solicit their business.

He also stated in his affidavit that he believed the Defendant was soliciting customers by mail. At least one customer received a fully prepared transfer of account form. The Plaintiff also sent by Federal Express a letter seeking assurance that the Defendant would honor the terms of the Agreement. He received no reply.

The Defendant also had the tools to solicit the Plaintiff's customers. Mr. Heaney stated that the Defendant confiscated hundreds of confidential Merrill Lynch monthly statements. He demanded their return immediately. Yet, it took the Defendant nearly two hours to return them. He lives only 20 minutes from the office. During this time, Mr. Heaney stated that he believes the records were being copied.

## 2. IRREPARABLE INJURY

The second element that must be satisfied is a substantial threat that the Plaintiff will suffer irreparable injury. Fla. Stat. Ann. § 542.33 (1980 West & 1992 Supp.) includes a rebuttable

presumption that use of trade secrets, customer lists or direct solicitation of existing customers shall be presumed to be an irreparable injury. The Defendant has not demonstrated that irreparable injury will not occur. The Defendant only claims that the Plaintiff can bring an action at law to recover lost commissions on future transactions.

At stake is more than just the lost commissions. Here, the Plaintiff is fighting for the chance to solicit and maintain its customers as well as earning future commissions. As one Court has correctly stated, "[w]hen an account executive breaches his employment contract by soliciting his former employer's customers, a non-solicitation clause requires immediate application to have any effect. An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done. The customers cannot be 'unsolicited.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1054 (4th Cir. 1985). Thus, the monetary damages would be incalculable since there would be no way of accurately determining which clients were lost due to solicitation and which ones were lost because they simply would have followed the Defendant regardless of being solicited.

Without an injunction, their is a substantial threat that the Plaintiff will suffer irreparable injury.

### 3. BALANCING OF INTERESTS

The third element that must be satisfied is balancing the interests. There are two interests at stake. The Plaintiff has

8

an interest in protecting its resources invested in training its employees, goodwill in its business reputation, trade secrets, methods of business, operations, confidential customer information, records, and information, and contract rights.

The Defendant has an interest in earning a living in the same trade. He also has an interest in living in the same area and working with those accounts he serviced while working for the Plaintiff. The Defendant may still pursue these interests and service those former accounts. He cannot, however, solicit those former accounts he serviced. If the customers choose to leave on their own accord, they are free to do so. The Plaintiff, however, has the right to contact their customers, explain the change in personnel, and solicit their business.

After weighing these interests, it is clear that the threatened injury to the Plaintiff outweighs the harm an injunction would cause the Defendant.


4. THE PUBLIC INTEREST

The last element that must be satisfied is that the public interest must not be disserved. Here, the public interest is served because the public through its elected officials have enacted a statute to enforce reasonable contracts in order to protect the investments made by businesses in the development of their companies. In addition, the public can still choose who they want to service their accounts. The Plaintiff will have the chance to solicit their business, and if they are dissatisfied with the

9

new representative, they can use any brokerage firm they choose
except the Defendant. The freedom of the customer to choose is
still preserved while protecting the Plaintiff's legitimate
business interest.

Accordingly, it is ORDERED AND ADJUDGED that:

1. 'After hearing and upon consideration of the Motions,
Affidavits and Memoranda submitted by the parties, the Plaintiff's
Motion for Preliminary Injunction (Doc.#2) is GRANTED. The
following Preliminary Injunction shall be in effect with the
$10,000 security previously posted to remain in the registry of the
Court.

The Defendant, and any other persons in active concert or
participation with him who receive actual notice of this Order by
personal service or otherwise, is enjoined and restrained, directly
or indirectly, from:

a. soliciting any business from any client of Merrill
Lynch residing within one hundred miles of the Orlando, Florida
office of Merrill Lynch whom Defendant served or whose name became
known to Defendant while in the employ of Merrill Lynch, and from
accepting any business from any of said customers whom Defendant
has solicited in the past for the purpose of doing business with
Defendant's present employer including, without limitation, all
individuals and entities referenced in Exhibit "B" to Plaintiff's
Verified Complaint (excluding Defendant's immediate family); and,

10

b.    using,   disclosing,   or   transmitting   information contained  in  the  records  of  Merrill  Lynch,  including  the  names, addresses,  and  financial  information  of  clients  referenced  in  Exhibit "B"; and that original record and all copies and/or reproductions and/or computerized  recordings  thereof,  in  whatever  form,  be  immediately returned to Plaintiff.

2.    The Plaintiff, if asked, shall advise each customer what firm  the  Defendant  is  now  with,  and  may  as  well  express  their  desire that the account be kept at Merrill Lynch.

3.    Defendant's  Motion  to  Compel  Arbitration  (Doc.#10)  is GRANTED only insofar as requiring the parties to submit to arbitration in  accordance  with  the  Constitution  and  Rules  of  the  New  York  Stock Exchange.

4.    All  further  proceedings  are  hereby  STAYED  other  than  to enforce the terms of this Injunction which shall remain in full force and effect pending arbitration.

DONE AND ORDERED at Orlando, Florida, this 15th day of May, 1992, at 4'52 PM.

_____
HARVEY E. SCHLESINGER
United States District Judge

Copies to:

Robert D. Nadeau, Jr., Esquire

Curtis Carlson, Esquire

11

COPY

FILED

92 MAY 15 PH 4: 21

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

                              Plaintiff,

vs.                                     Case No. 92-362-Civ-ORL-20

JAMES N. COSMIDES,

                              Defendant.

_____

O R D E R

The Plaintiff filed on May 7, 1992, a Motion for Temporary
Restraining Order (hereinafter "TRO") and Preliminary Injunction.
The Plaintiff then filed on May 8, 1992, an Amended Motion for
Temporary Restraining Order and served the Defendant notice of
these motions. The Court granted an ex parte TRO on May 8, 1992,
which enjoined the Defendant from soliciting any business from any
of Merrill Lynch's clients that reside within 100 miles of the
Orlando office, from accepting any business from any of those
customers whom the Defendant has solicited in the past (excluding
his immediate family), and from using, disclosing, or transmitting
information contained in those records to third parties.  The Court

conducted a hearing on the Motion for Preliminary Injunction on May 13, 1992.

## FACTUAL BACKGROUND

The Plaintiff is a brokerage firm. The Plaintiff, through its brokers, sells various types of financial securities to the public. Client records, account information, and business reputation are essential ingredients to being successful. These records and account information are, therefore, a key ingredient in making future sales and earning profits.

The Defendant, Mr. James N. Cosmides, was employed as a financial consultant. As a financial consultant, the Defendant's job was to work with the Plaintiff's clients and help them develop financial strategies to achieve personal investment goals. He serviced, according to the Plaintiff, over 380 accounts worth $37.1 million dollars in assets, and annual sales commissions in excess of $288,000.

While the Defendant was employed at Merrill Lynch, the Plaintiff would provide the Defendant consultant with various resources. The Defendant was sent to an intensive training class at Merrill Lynch's national training facility and other training at the Orlando office. The Plaintiff registered the Defendant with various securities dealers, the American Stock Exchange, and other state securities commissions. The Plaintiff also provided him with the benefit of all of the Plaintiff's systems, benefits and support

2

throughout his employment.  All of these benefits were given to the Defendant, at least in part, to enable him to better serve the Plaintiff's clients and develop sound financial strategies.

In return for all these benefits, the Plaintiff and the Defendant agreed to a covenant.  The covenant was part of a Trainee Agreement which the Defendant signed on May 20, 1985, as a condition of his employment at Merrill Lynch.  The Agreement provides in pertinent part that:

> [i]n the event of termination of [the Defendant's] services with Merrill Lynch for any reason, [the defendant] will (i) not solicit for a period of one year from the date of termination of [his] employment, any of the clients of Merrill Lynch whom [he] served or other clients of Merrill Lynch whose names became known to [him] while in the employ of Merrill Lynch in the office of Merrill Lynch in which [he] was employed, and who reside within one hundred miles of the Merrill Lynch office in which [he] was employed, and (ii) return any original records and purge or destroy any computerized, duplicated, or copied records referred to in paragraph 1 which have been removed from the premises of Merrill Lynch in any term....

Plaintiff's Exhibit A, paragraph 2.  The Agreement also provides that the Defendant consents to the issuance of a TRO or a Preliminary or Permanent Injunction to maintain the status quo pending the outcome of any arbitration proceeding.

After working at Merrill Lynch for several years, the Defendant left Merrill Lynch on May 4, 1992, and he resigned without notice. On the day he resigned, Mr. Donald S. Heaney presented him with a copy of the Trainee Agreement and told him that soliciting these clients would violate the agreement. After it was brought to his attention by the Plaintiff's sales

3

representatives that the Plaintiff's customers were contacted by the Defendant, and he solicited the transfer of their accounts to Prudential. As a result, the Plaintiff filed this suit.

The Plaintiff filed a Complaint alleging that the Defendant breached this Trainee Agreement and sought injunctive relief as well.  The Plaintiff alleges the following causes of action: (1) conversion of trade secrets, customer lists, and confidential business information, (2) breach of contract, (3) breach of fiduciary duty, and (4) unfair competition.

## JURISDICTION

The first issue the Court must address is jurisdiction. The Defendant argues that this Court is without jurisdiction to grant an injunction.  Accordingly, the Defendant argues that the Court should deny the injunction and stay any further proceedings until the New York Stock Exchange can arbitrate this dispute. The Defendant contends that 9 U.S.C. § 3, which is commonly known as the Federal Arbitration Act, requires a stay of all proceedings until arbitration is completed.

The several Circuits that have considered the jurisdiction of a District Court to grant injunctive relief under the same factual setting have concluded that the Court does have jurisdiction. *See, e.g. Teradyne Inc. v. Mostek Corp.,* 797 F.2d 43 (1st Cir. 1986); *Blumenthal v. Merrill Lynch, Pierce Fenner & Smith, Inc.,* 910 F.2d 1049 (2d Cir. 1990); *Ortho Pharmaceutical Corp. v. Amgen, Inc.,* 882 F.2d 806 (3d Cir. 1989); *Merrill Lynch,*

4

*Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir. 1985).

Although the Defendant relies on *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1291 (8th Cir. 1984), that decision alone does not hold that the District Court is without jurisdiction, and it can be reconciled with the other Circuits. The Hovey court qualified its holding to contracts which do not contain any qualifying language. *Id.* at n.10. If, on the other hand, the parties contractually agree that disputes shall be immediately enjoined and the status quo maintained until the case is referred to arbitration, the District Court can properly exercise its jurisdiction since the Defendant has consented to maintain the status quo pending arbitration.

## PRELIMINARY INJUNCTION

A Preliminary Injunction may be entered where four essential elements are satisfied: (1) the Plaintiff demonstrates a substantial likelihood that it will prevail on the merits, (2) there exists a substantial threat that the Plaintiff will suffer irreparable injury, (3) the threatened injury to the Plaintiff must outweigh the harm the injunction would cause to the Defendant, and (4) the injunction must serve the public interest. *Harris Corp. v. Nat'l Iranian Radios & Television*, 691 F.2d 1341, 1355 (11th Cir. 1982).

5

## 1. LIKELIHOOD OF SUCCESS

Although some Courts do not enforce covenants that restrict trade, this Court sitting in diversity must look to the law of Florida which does enforce these agreements. See Fla. Stat. Ann. § 542.33 (West 1980 & 1992 Supp.). There are some limitations, however. The employer, for example, may not use the agreement simply to eliminate competition. Instead, the employer must establish a legitimate business interest as a threshold condition to the validity of a covenant not to compete. Hapney v. Central Garage, Inc., 579 So.2d 127, 131 (Fla.2Dist.Ct.App. 1991).

The law has recognized three specific interests that are legitimate business interests: (1) trade secrets and confidential business lists, records, and information, (2) customer goodwill, and (3) to a limited degree, extraordinary or specialized training provided by the employer. Id. The Trainee Agreement alleged to be breached includes this statutorily protected interest—trade secrets and confidential business lists, records, and information. Thus, the Plaintiff has a legitimate business interest, and the Agreement is narrowly drawn. Therefore it is a reasonable covenant and it is enforceable.

There is a substantial likelihood that the Plaintiff will prevail on the merits since the Trainee Agreement is enforceable at law and the Defendant breached the non-solicitation covenant by soliciting clients within 100 miles of the Orlando office. The Plaintiff submitted an affidavit by Mr. Donald S. Heaney, the Senior Resident Vice President of Merrill Lynch and Manager of the

6

Orlando office, stated that at the time of the Defendant's resignation, the Plaintiff asked if he planned to solicit his accounts. He responded, "I'm going to call them." He also responded that he planned to notify some by writing. Later that same day, it was reported by three different sales representatives that three different customers disclosed to them that the Defendant invited them to transfer their business to Prudential.

He also stated in his affidavit that he believed the Defendant was soliciting customers by mail. Mr. Heaney went so far as to call Mr. Gray, the Sales Manager for Prudential, and asked him if the Defendant were soliciting the Plaintiff's customers. He responded, "it was none of your business whether Cosmides had the Plaintiff's records or was soliciting their customers." The Plaintiff stated that he believed the Defendant had solicited their customers by mail because had requested 370 mailing labels for the Plaintiff's accounts one month before his termination. The Plaintiff's mailroom supervisor stated that he does not remember the Defendant making any group mailing in the past month. Mr. Heaney also stated he believed the labels were taken by the Defendant to Prudential.

Mr. Heaney also Federal Expressed a letter to the Defendant seeking assurance that he has not repudiated the Employment Agreement. He never responded. Although he never responded, the mailing labels were unaccounted for and the monthly customer statements were missing from his office. The Defendant gave no assurance that he would not solicit the Plaintiff's accounts, and

7

he had in his possession the confidential customer lists necessary to solicit them.

## 2.  IRREPARABLE INJURY

The second element that must be satisfied is a substantial threat that the Plaintiff will suffer irreparable injury.  Fla. Stat. Ann. § 542.33 (1980 West & 1992 Supp.) includes a rebuttable presumption that use of trade secrets, customer lists or direct solicitation of existing customers shall be presumed to be an irreparable injury.  The Defendant has not demonstrated that irreparable injury will not occur.  The Defendant only claims that the Plaintiff can bring an action at law to recover lost commissions on future transactions.

At stake is more than just the lost commissions.  Here, the Plaintiff is fighting for the chance to solicit and maintain its customers as well as earning future commissions. As one Court has correctly stated, "[w]hen an account executive breaches his employment contract by soliciting his former employer's customers, a non-solicitation clause requires immediate application to have any effect.  An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done.  The customers cannot be 'unsolicited.'  *Merrill Lynch, Pierce, Penner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1054 (4th Cir. 1985). Thus, the monetary damages would be incalculable since there would be no way of accurately determining which clients were lost due to

8

solicitation and which ones were lost because they simply would have followed the Defendant regardless of being solicited.

Without an injunction, their is a substantial threat that the Plaintiff will suffer irreparable injury.

### 3. BALANCING OF INTERESTS

The third element that must be satisfied is balancing the interests. There are two interests at stake. The Plaintiff has an interest in protecting its resources invested in training its employees, goodwill in its business reputation, trade secrets, methods of business, operations, confidential customer information, records, and information, and contract rights.

The Defendant has an interest in earning a living in the same trade. He also has an interest in living in the same area and working with those accounts he serviced while working for the Plaintiff. The Defendant may still pursue these interests and service those former accounts. He cannot, however, solicit those former accounts he serviced. If the customers choose to leave on their own accord, they are free to do so. The Plaintiff, however, has the right to contact their customers, explain the change in personnel, and solicit their business.

After weighing these interests, it is clear that the threatened injury to the Plaintiff outweighs the harm an injunction would cause the Defendant.

## 4. THE PUBLIC INTEREST

The last element that must be satisfied is that the public interest must not be disserved. Here, the public interest is served because the public through its elected officials have enacted a statute to enforce reasonable contracts in order to protect the investments made by businesses in the development of their companies. In addition, the public can still choose who they want to service their accounts. The Plaintiff will have the chance to solicit their business, and if they are dissatisfied with the new representative, they can use any brokerage firm they choose except the Defendant. The freedom of the customer to choose is still preserved while protecting the Plaintiff's legitimate business interest.

Accordingly, it is ORDERED AND ADJUDGED that:

1.   After hearing and upon consideration of the Motions, Affidavits and Memoranda submitted by the parties, the Plaintiff's Motion for Preliminary Injunction (Doc.#2) is GRANTED. The following Preliminary Injunction shall be in effect with the $10,000 security previously posted to remain in the registry of the Court.

The Defendant, and any other persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, is enjoined and restrained, directly or indirectly, from:

10

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

Plaintiff,

VS.                                              Case No. 92-182-Civ-ORL-20

JAMES N. COSMIDES,

Defendant.

_____

## O R D E R

The Plaintiff filed on May 7, 1992, a Motion for Temporary
Restraining Order (hereinafter "TRO") and Preliminary Injunction.
The Plaintiff then filed on May 6, 1992, an Amended Motion for
Temporary Restraining Order. The Defendant was served notice of
these motions, but he has not yet filed a response.

The Plaintiff employed the Defendant as a financial
consultant. As an employee, the Defendant signed an Executive
Trainee Agreement which prohibited solicitation for a period of one
year from the date of termination of employment. The Defendant
terminated his employment on May 4, 1992, and has begun working for
a competitor, Prudential Securities, Inc., in Orlando. The
Plaintiff requests a TRO in order to prevent the Defendant from

pirating its records, customer lists, trade secrets and other information. It is feared that this information will be given to the Defendant's new employer, and the Plaintiff believes it could lose 380 accounts totaling $37.1 million in assets.

The employment contract between the parties includes provisions that forbid the Defendant from: (1) taking any records on Plaintiff's customers, which are defined as the property of Plaintiff, from Plaintiff's premises, either during or after his employment, and (2) soliciting Plaintiff's customers which Defendant either served or knew were served by Plaintiff during Defendant's employment, who reside within 100 miles of Merrill Lynch's Orlando office for a period of one year from employment termination. The Defendant also consented in the contract to the issuance of a temporary restraining order, preliminary injunction or permanent injunction prohibiting any breach of the contract or to maintain the status quo pending arbitration.

Florida substantive law applies in this case. Under Florida law, Merrill Lynch's covenant not to compete is enforceable, and irreparable harm flowing from the use of customer lists and direct solicitation of existing customers is presumed. Fla. Stat. §542.33 (2)(a). The case law also supports immediate injunctive relief in order to enforce these contracts and maintain the status quo. See, e.g., Merrill Lynch, Fenner & Smith v. Stidham, 658 F.2d 1098 (5th Cir. 1981); Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Bradley, 756 F.2d 1048 (4th Cir. 1985); Merrill Lynch v. Hellegard, No. 91 Civ. 1708 (M.D.Fla.Dec. 5, 1991).

2

05/04/92   14:39   ☎904 701 2243      CL. U.S.DIST. CT --- ORLANDO

Accordingly, it is ORDERED AND ADJUDGED that:

1.  The Plaintiff's Amended Motion for Temporary Restraining Order (Doc. #6) is GRANTED.  The following Temporary Restraining Order shall be in effect upon the posting of $10,000 in security: Defendant, and any other persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, is enjoined and restrained, directly or indirectly, from:

a.  soliciting any business from any client of Merrill Lynch residing within one hundred miles of the Orlando, Florida office of Merrill Lynch whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch, and from accepting any business from any of said customers whom Defendant has solicited in the past for the purpose of doing business with Defendant's present employer including, without limitation, all individuals and entities referenced in Exhibit "B" to Plaintiff's Verified Complaint (excluding Defendant's immediate family);

b.  using, disclosing, or transmitting information contained in the records of Merrill Lynch, including the names, addresses, and financial information of clients referenced in Exhibit "B"; and that original record and all copies and/or reproductions and/or computerized recordings thereof, in whatever form, be immediately returned to Plaintiff.

2.  The Court will conduct a hearing on the Motion for a Preliminary Injunction on Wednesday, May 13, 1992, at 10:00 a.m.,

3

in Courtroom #6 of the United States courthouse.  The Temporary
Restraining Order shall remain effective until the end of the
hearing. The parties are directed to follow the requirements of
Local Rules 4.05 and 4.06, M.D.Fla. Rules, in preparing for the
hearing.

3.  Upon Plaintiff posting the bond, the United States
Marshal is directed to immediately serve this order upon the
Defendant and return to the Court a copy as proof of execution.

DONE AND ORDERED at Jacksonville, Florida, this 8th day of
May, 1992 at 2:22PM.

HARVEY E. SCHLESINGER
United States District Judge

Copies to:

Robert D. Nadeau, Jr., Esquire

Scott D. Martin
111 North Orange Ave.
Orlando, Florida 32801

United States Marshal

I certify the foregoing to be a true
and correct ...
DAVID ...
Clerk of ...
by M. Campbell

By: _____
Deputy ...

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

        Plaintiff,

-vs-                      CASE NO. 91-1708-Civ-T-10(C)

SHERVIN J. MELLEGARD,

        Defendant.
_____/

I certify the foregoing to be a true
and correct copy of the original.
DAVID L. EDWARDS. Clerk
United States District Court
Middle District of Florida

O R D E R By: *Shann Huddleston*
Deputy Clerk

Before the Court is Plaintiff's ex parte motion for a temporary
restraining order filed pursuant to Fed.R.Civ.P. 65. The Defendant
was an account executive/stock broker employed by the Plaintiff. The
Defendant voluntarily terminated his three and a half year employment
with Plaintiff on 27 November 1991 and started to work for
Plaintiff's competitor, Shearson Lehman Brothers, Inc. As alleged
in the verified complaint, the Defendant is said to have taken record
information on Plaintiff's customers with him to his new employer and
that he is using the information to solicit the customers' investment
business.

The employment contract between the parties includes provisions
that forbid the Defendant from: 1) taking any records on Plaintiff's
customers, which are defined as the property of Plaintiff, from
Plaintiff's premises, either during or after his employment, and 2)
soliciting Plaintiff's customers which Defendant either served or
knew were served by Plaintiff during Defendant's employment, who
reside within 100 miles of Plaintiff's Clearwater office for a period
of one year from employment termination. The Defendant also
consented in the contract to the issuance of a temporary restraining

72A

order, preliminary injunction or permanent injunction prohibiting any breach of the contract or to maintain the status quo pending arbitration.

The substantive law of Florida applies in this case.  <u>See</u> <u>Merrill Lynch, Pierce, Fenner & Smith v. Stidham</u>, 658 F.2d 1098 (5th Cir. Unit B 1981).  Under Florida law, Merrill Lynch's covenant not to compete is enforceable, and irreparable harm flowing from the use of customer lists and direct solicitation of existing customers is presumed.  Fla. Stat. §542.33(2)(a).

With facts identical to the present case, except as noted, <u>Merrill Lynch, Pierce, Fenner & Smith v. Stidham</u>, 658 F.2d 1098 (5th Cir. Unit B 1981), provides compelling support for the issuance of a temporary restraining order here.  In <u>Stidham</u> the Fifth Circuit, in an opinion by Judge Hill, affirmed a permanent injunction enjoining the former employee/stock broker from disclosing information on customers.  Although it vacated the noncompetition portion of the injunction, it did so grudgingly and only because the noncompetition clause was unenforceable under Georgia law.  The noncompetition clause here is enforceable under the applicable state law; therefore, injunctive relief is appropriate.

The temporary restraining order is being issued without notice due to the immediate and irreparable harm to the Plaintiff flowing from Defendant's alleged breaches.  The Defendant left Plaintiff's employ on 27 November 1991.  The Plaintiff promptly filed this action on 2 December 1991 and hand delivered the verified complaint and motion for a temporary restraining order to the Defendant.

Upon due consideration:

2



1.  The following temporary restraining order shall be in effect upon the posting of $10,000 in security:  Defendant, and any other persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, is enjoined and restrained, directly or indirectly, from:

      a.  Soliciting any business from any client of Merrill Lynch residing within one hundred miles of the Clearwater office of Merrill Lynch whom Defendant served or whose names became known to Defendant while in the employ of Merrill Lynch, and from accepting any business from any of said customers whom Defendant has solicited in the past for the purpose of doing business with Defendant's present employer;

      b.  Using, disclosing, or transmitting information contained in the records of Merrill Lynch.

2.  The Court will conduct a hearing on the motion for a preliminary injunction on Friday, 13 December 1991 at 4:00 p.m. in Room 415 of the United States Courthouse.  The temporary restraining order will remain effective until the end of the hearing.  The attention of the parties is directed to the requirements of Rules 4.05 and 4.06, M.D.Fla. Rules, in preparing for such hearing.

      IT IS SO ORDERED.

      DONE and ORDERED at Tampa, Florida, this _____ 5ᵗʰ _____ day of December, 1991 at __4:15 p.m.__.

                        _Elizabeth Hodges_
                        UNITED STATES DISTRICT JUDGE

72A
v. 8/82)